# Gassenheimer *et al. v.* The State.

### *Indictment for Receiving Stolen Goods.*

1. *Receiving stolen goods; prosecutor a competent witness.* — The owner of stolen property is a competent witness against a party charged with having receiving it knowing that it had been stolen.

2. *Evidence as to loss of property; what properly received.* — A witness who testified that he had lost cotton from his gin-house is properly permitted to state that he ascertained that fact by a comparison of the weight of the cotton when first put in the house with its weight after being " ginned out."

3. *Leading question to prosecutor; discretionary with primary court.* — It is discretionary with the primary court to permit, or refuse, a leading question to be put by a party to his own witness, and the exercise of this discretion is not revisable.

4. *Excitement of prisoner; what evidence of, inadmissible.* — It is error to allow a

[Gassenheimer v. State.]

witness to state that the prisoner "looked excited;" the signs of excitement should be stated, and the question left for the determination of the jury unbiased by the witness' opinion. Such evidence should always be received and weighed with great caution,

5. *Distinct substantive offence, evidence of, on trial of another; when admissible.* — Evidence of one distinct substantive offence is generally inadmissible on the trial of another, but may be resorted to in some cases : *e. g.,* as where the offence charged and that proposed to be proved constitute but one transaction, or to prove the identity of the offender; where it is necessary to prove a motive, and there is an apparent connection between the criminal act proposed to be proved and that charged; where the accusation involves a series of criminal acts which must be proved to make out the offence; where it is necessary to prove a *scienter,* and the like.

6. *Same; what not admissible in proof of scienter.* — In a prosecution for receiving a sack of cotton knowing it to have been stolen, it is not competent for the State to show, in proof of the guilty knowledge of defendants, that "the week previous to the finding of the sack of cotton in defendants' storehouse, persons had been seen going in just before and about daybreak, with sacks of cotton, and coming out with the sacks empty." Such facts alone, neither show that such sacks of cotton were stolen, nor that defendants knew it when they received them.

7. *Discharge of one of several defendants under section 4192 of Revised Code; action of court under, when not revised.* — Section 4192 of the Revised Code, authorizing the discharge of any one of several joint defendants as to whom there is not sufficient evidence to put him on his defence, imposes delicate and responsible duties, in the exercise of which much must be left to the sound discretion of the lower court. Its action in this respect will not be revised when all the evidence is not set out, or where it is merely stated in general terms.

APPEAL from Circuit Court of Lee.

Tried before Hon. J. E. COBB.

The appellants G. Gassenheimer, S. Gassenheimer, Joseph Gassenheimer, and Dock Bedell, were indicted and convicted for receiving a sack of cotton, the property of J. B. Corr, knowing it had been stolen, &c. The indictment was returned into court on the 7th of November, 1874.

On the trial, the prosecutor Corr, owner of the property alleged to have been stolen, was introduced as a witness. The defendants objected to his testifying on the ground that he was interested in the event of the suit; whereupon Corr, through counsel, announced that he released all right to a judgment for the stolen property, and waived any right to have it incorporated in the judgment for the fine and costs. The court then overruled the defendants' objection and permitted the witness to testify, and the defendants duly excepted. In the course of his testimony Corr testified that he had lost two or three bales of cotton from his gin-house in the fall and early winter of 1874; that he knew this from the way the cotton "ginned out" as compared with its weight when put in the house. "To this answer, and the reasons for it, the defendants objected, and moved the court to exclude them from the jury," but the motion was overruled and they excepted.

The State then asked Corr this question, in reference to the sack mentioned in the indictment : "Did you ever see that sack after you saw it in the Gassenheimers' house?" An ob-

[Gassenheimer v. State.]

jection to the question, on the ground that it was leading, was overruled, and the witness permitted to answer against the objection and exception of the defendants.

A state's witness, one Avery, testified that one day in November, 1874, seeing a light burning in Gassenheimers' store an hour before day he went to the house and knocked at the door. J. Gassenheimer, the only person in the house, opened the door, and the witness, on going in, saw three sacks of cotton, including the one afterwards claimed by Corr, whose right to it was disputed by the Gassenheimers. These sacks were full of cotton, and damp on the sides and the top, where the cotton had been exposed to the dew, just as two other sacks were which Corr claimed, which witness found in the street, in the possession of two negro men who ran out of the house as the witness came up. The witness was then asked " how the prisoner J. Gassenheimer looked when you went in ? " The defendants objected to this question, but their objection having been overruled, and the witness having answered that Gassenheimer " looked excited," the defendants moved to exclude the answer from the jury, which motion was overruled, and the defendants duly excepted.

The prosecution asked a witness " if he had seen any persons on other nights during the week, before the time testified to by Avery, go into said house of defendants trading." Defendants' objection to this question, because it called for illegal and irrelevant evidence, was overruled and they excepted. The witness answered that " he had seen persons go in there with sacks filled, just before and about daybreak the week previous to the time testified to by Avery, and come out with sacks empty." The court refused to exclude this testimony on motion of defendants, and they excepted.

During the progress of the trial two of the defendants, on the ground that there was not sufficient evidence to put them on their defence, moved the court to direct their acquittal and allow them to testify, &c. This the court refused to do, and they duly excepted. As this court was of opinion that the evidence connecting these defendants with the offence was not stated with sufficient explicitness, it is not necessary to refer to the evidence on this point. The bill of exceptions states that it does not contain all the evidence, but " only so much of it as was deemed sufficient to raise the questions on which the appeal was taken."

The court at the request of defendants gave two charges as to the effect of guilty knowledge proved as to only one of the defendants, but " each time said to the jury, in addition, that they might look to all the evidence to show the knowledge of all the defendants." To the giving of these " additional charges " the defendants excepted.

[Gassenheimer *v.* State.]

The various rulings to which exception was reserved are now assigned as error.

H. C. LINDSEY, for appellants. — 1. The prosecutor was a competent witness. The judgment being the same in this case as in larceny, he was entitled to judgment, on conviction, for the value of his property. The mere announcement of a release and waiver does restore competency. *Schuylkill Nav. Co.* v. *Harris*, 5 Watts & Serg. 28; 1 Cowen, 122. Corr's reasons for saying he had lost cotton showed that it was mere idle speculation on his part; his answer should have been ruled out. It was error to allow the witness to testify that defendant looked excited. *Johnson* v. *The State*, 17 Ala. 618. The testimony about others trading with defendants who brought in sacks before day, was clearly illegal and foreign to the issue. There was no proof that that cotton was stolen, and even if there was, there was no evidence to show knowledge of its having been stolen on part of defendants. *Wisdom* v. *The State*, 8 Port. 511; 5 Grattan, 596; *Rex* v. *Birdseye*, 18 Eng. Com. Law, 433. The additional charges, as the bill of exceptions terms them, were really "qualifications," and erroneous. *Edgar* v. *State*, 43 Ala. 45.

JOHN W. A. SANFORD, Attorney-General, with whom was F. M. WOOD, *contra.* — The refusal of the court to discharge two of the defendants, and its permitting a leading question to the prosecutor, are matters of discretion and not revisable. 35 Ala. 247. The testimony shows that Corr had lost other sacks besides the one mentioned in the indictment; that the parties who had them ran out of defendants' house, before day, when Avery appeared there. This testimony, and the testimony about what was done under suspicious circumstances, a short time before that, was admissible to show a guilty knowledge. 15 Ala. 749; 39 Ala. 247; 41 Ala. 405; 42 Ala. 532. The explanatory charges were not erroneous. 25 Ala. 57; 35 Ala. 184; 40 Ala. 715; 37 Ala. 117. Corr was not entitled to a judgment for value of the property on conviction. Rev. Code, § 3709. Besides, his waiver in open court makes him competent. The reasons given by the witness for saying he had lost cotton, goes to the weight and not to the admissibility of the testimony. The statement of the witness that prisoner "looked excited," was the statement of a fact. How can a witness describe a glance of surprise, or a menacing look, unless he uses the words which describe these emotions?

BRICKELL, C. J. — 1. On a conviction for receiving stolen goods, the party injured is not, as the counsel for appellants suppose, entitled to a judgment for the value of the goods, nor

[Gassenheimer *v.* State.]

is any pecuniary penalty imposed for his benefit.    He is not, therefore, disqualified as a witness.    *State* v. *Trusts,* 9 Port. 126.

2.  The witness Corr, having testified that he had lost two or three bales of cotton from his cotton-house in the fall and winter of 1874, was properly permitted to state his means of ascertaining the fact — that he knew it from the weight of the cotton after it was ginned, compared with its weight when it was put in the house.

3.  It is in the discretion of the primary court to permit or refuse a leading question to be put by a party to his own witness, and the exercise of the discretion is not revisable on error. *Blevins* v. *Pope,* 7 Ala. 371 ; *Sayre* v. *Durwood,* 35 Ala. 247.

4.  The conduct, demeanor, and words of one charged with crime, about the time of its commission or of its discovery, or on his arrest for or on accusation of it, are admissible in evidence against him.    The mental emotion he exhibits is a criminative fact of more or less force, as it is connected with other facts and circumstances.    Alarm, confusion, anger, resentment, or despair may be evinced, and may spring from a consciousness of guilt.    In the olden time it was a popular superstition, that the corpse of the slain would bleed afresh if touched by the murderer ; and it was deemed almost conclusive of guilt, that he who was charged with the murder refused to lay his finger on the body, or to take its hand.    In recent years persons suspected of murder have been required to touch the dead body ; not because the old superstition was indulged, but that its effect on them — the emotion produced and manifested — could be observed.    Burrill on Cir. Ev. 478–9.    The mental emotions, the manner in which they will be manifested, the causes which will produce them, are as varied and various as the faces and physical organizations of men.    It is a dangerous species of evidence, and too much caution cannot be exercised in receiving and weighing it.    It was proper to show that the defendant, who was in the storehouse when the cotton was found, exhibited alarm or confusion, or any other unusual emotion — any emotion which there was no adequate cause to produce, except a consciousness of guilt, and of his detection. We do not understand that any accusation of crime had been made against the defendant, or that there was anything in the mode of the witness' entrance into the storehouse calculated to provoke any excitement or agitation on the part of the defendant.    That he exhibited it on the witness' entrance, and discovery of the cotton, was, therefore, a criminative fact. Whether it was manifested was a conclusion it was the exclusive province of the jury to draw when the signs of it were proved.    The witness could not draw it for them.    His opinion

[Gassenheimer v. State.]

that the defendant " looked excited," should not have been permitted to go to the jury. Whatever signs of excitement he exhibited, the witness should have stated, and the jury should have been left free, without the aid of his opinion, to determine whether there was any undue excitement or agitation on the part of the defendant. *Johnson* v. *State*, 17 Ala. 618. The witness may not have been free from excitement himself, and his own emotions may, in his imagination, have lent a hue to the conduct of the defendant. Opinions of witnesses as to the conduct, or appearance, or demeanor of others are never very reliable, and should never be received when better evidence is attainable. It is never satisfactory, though it may be more difficult for them to state facts, and let impartial and sworn triers of fact form and express the opinion.

5. The evidence must be confined to the points in issue, alike in civil and in criminal cases, and facts and circumstances, which when proved are incapable of affording any fair, just, and reasonable presumption or inference, in reference to a material fact or inquiry involved in the issue, cannot be given in evidence. In criminal prosecutions, it is an elementary principle that evidence of a distinct, substantive offence is not to be received in support of another offence ; nor, in the application of the rule, is it material that the offences are similar in character. The justness and reason of the rule is apparent, and a strict adherence to it is necessary to prevent criminal prosecutions from becoming instruments of oppression and injustice. No man shall be twice put in jeopardy for the same offence, and of the nature and cause of the accusation made against him, he shall be fully informed before he is called to trial, is the paramount law of the land. Than that accusation, he cannot be supposed to stand prepared to answer. This rule has, however, its exceptions ; and while evidence of any other offence than that specially charged is *primâ facie* inadmissible, such evidence will be received, when necessary to prove the *scienter* or guilty knowledge, which is an element of the offence charged. We must not be understood as asserting this is the only exception to the rule, but that it is the only exception this case involves. There are other exceptions, which, if necessary to classify, would be found perhaps to range themselves under these heads : when the offence charged and the offence proposed to be proved are so connected that they form part of one transaction ; when it is material to show the intent with which the particular act charged as criminal was done, evidence of another similar act, though it was in itself a criminal offence, may be given ; when it is necessary to prove a motive for the criminal act imputed, and there is an apparent relation or connection between that act and other criminal acts

VOL. LII.

committed by the accused ; when it is necessary to prove the identity of the offender, or of an instrument used in committing the offence. There are also cases in which the accusation itself involves a series of acts which must be proved to make out the offence ; and cases in which the several offences are all parts of the *res gestæ*. This case is, however, limited to the exception of the *scienter*. The indictment against the defendants contains but one count, charging a single substantive offence, the buying, receiving, concealing, or aiding in concealing a sack of seed cotton, knowing the same had been stolen. The guilty knowledge is the material element of the offence. Evidence had been given tending to show that the sack of cotton had been stolen ; that it was carried into the storehouse of defendants in the night-time, and there found, connected with other evidence of suspicious circumstances. The State, against the objection of appellants, was permitted to prove, that during the week previous to the finding the sack of cotton in the storehouse of defendants, persons had been seen going into their storehouse just before and about daybreak, with sacks of cotton, and coming out with the sacks empty. These may have been suspicious facts or circumstances, from the time of their occurrence ; they may generate the belief the defendants were engaged in some species of illegal trading ; they may have tended to fix on them a bad reputation ; but it is not easy to perceive what legitimate tendency they had to prove the defendants knew this particular sack of cotton had been stolen. The evidence doubtless alarmed the suspicions of the jury, and inclined them the more readily to believe in the guilt of the defendants, and the less inclined to listen to whatever was offered or said in their defence ; but no legitimate inference of knowledge that this particular cotton had been stolen could be based on it. It was not shown the cotton carried there on other nights had been stolen ; and must the jury leap to the conclusion it had been, and having made that leap, take the further, that because that had been stolen the defendants must have known this cotton also was stolen ? Rumors and suspicions may be born of such facts, and depend on such inferences, but not the verdict of a jury which is to stamp dishonor and guilt on the citizen. This must rest on a more substantial basis. The law of the land has a higher logic and humanity than to found its judgments on such facts, and the vague inferences which unreasoning suspicion would draw from them. In the case of *Regina* v. *Oddy* (4 Eng. Law & Eq. 572), the evidence offered was much stronger than this. The defendant was indicted for receiving stolen goods, and it was proposed to prove the *scienter*, to show that at the time he received the prosecutor's goods he had in his possession other goods of the

same kind, stolen from a different owner. Lord Campbell said : "" The evidence does not tend to show that the prisoner knew these particular goods were stolen at the time he received them ;" and the court quashed a conviction based on it. If a defendant is to be convicted only on an accusation of which he is fully informed ; if he is not to be required to defend against any other accusation than that, the courts must protect him against evidence of this character, which cannot be made the basis of a just presumption or inference. If they had been apprised such evidence was to be introduced, who can say they could not have shown the transactions to which it relates were fair ? What is the fair inference from the evidence — that the cotton carried into the storehouse at the times to which the witness referred was stolen ? Why that inference ? It is the most uncharitable which can be drawn; and must juries, despite the charity of the law, which does not permit crime or fraud to be presumed when the facts are consistent with innocence, be invited to indulge such an inference ? We are of opinion the evidence was improperly admitted.

6. The Code declares that when two or more defendants are jointly indicted, the court may direct a verdict of acquittal to be entered in favor of any one of them, against whom there is not in the opinion of the court evidence sufficient to put him on his defence, and being acquitted he may be a witness. R. C. § 4192. This is perhaps nothing more than an affirmation of a rule prevailing at common law. Its introduction into the statute law of the State shows the importance the legislature attached to it. It imposes a delicate and responsible duty on the judge, to be exercised in furtherance of justice. It often occurs that grand jurors, through inadvertence, or on light and trivial evidence, join defendants who have no real connection in guilt, or some who are wholly innocent. Dishonest prosecutors may join them, to suppress evidence, or to silence all who could contradict them. While the judge trying the cause should be careful not to direct the acquittal of a defendant as to whom there is any evidence producing probable cause to believe him guilty ; he should be as careful not to subject a defendant against whom there is no evidence amounting to probable cause to the hazards of a conviction, or his co-defendants to the deprivation of his evidence, by refusing to direct an acquittal. Much must be left to the discretion of the primary court, and its action in this respect should not be revised unless all the evidence is set out in the bill of exceptions. From the general statements of the bill of exceptions taken in this case, we are not prepared to say whether there was or not suf-

[Lee v. State.]

ficient evidence to put on defence the defendants who moved
for an acquittal.

7. In the qualifications, or rather the explanations, of the
charges requested by appellants, we cannot perceive any error.

For the errors we have pointed out, the judgment must be
reversed and the cause remanded. The defendants must re-
main in custody until discharged by due course of law.