73 So.2d 370

**DANIELL v. STATE.**

**8 Div. 340.**

Court of Appeals of Alabama.

March 16, 1954.

Rehearing Denied April 14, 1954.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., for the State.

Scruggs & Scruggs, Guntersville, for appellant.

HARWOOD, Judge.

In the court below this appellant was convicted of assault with intent to rape.

The prosecutrix testified that she was riding around with the appellant in his truck on a night in August 1952.

About two miles below Scant City the appellant turned off of the main road onto a gravel road and drove down the gravel road about a quarter of a mile where he parked the truck.

The appellant then proceeded to make improper advances, and upon her resisting, told the prosecutrix that he was going to rape her or he was going to kill her. A struggle ensued.

The prosecutrix succeeded in getting out of the cab of the truck and ran back down the road about a quarter of a mile. When she reached the intersection of the main road she encountered Carmen Maze and Billy Rowe in a truck.

According to the prosecutrix the appellant followed her on foot about half the distance to the intersection then returned to his truck and followed her in it. During all this time the appellant was insisting that she get back in his truck, and that he was "aiming" to make her do so.

The prosecutrix also testified that he stated he would kill her if she got in the other truck with Maze and Rowe.

The prosecutrix further testified that when she met Maze and Rowe she asked them to take her back to Arab. In this connection the record shows the following:

"Q. What did you do when you saw them? A. I asked them if they would take me back to Arab.

"Mr. Scruggs: We object unless the defendant was present.

"Q. Was the defendant present at that time? A. Yes, sir.

"Q. Did—. What did you do then after you had asked these other boys to carry you to Arab? A. I got in the truck with them.

"Mr. Waid: You may ask her."

Carmen Maze, a witness for the State, testified that when he first saw the prosecutrix she was stumbling along the gravel road. Her blouse was unbuttoned. She made a complaint to him and Rowe. He saw the appellant there in a truck.

Billy Rowe was also a witness for the State. His testimony is largely corroborative of the testimony of the witness Maze. Rowe testified that he saw the appellant around there on that night riding in a pick up truck.

The Solicitor, during the direct examination of this witness, asked him to tell what the prosecutrix had said when she came up to him and Maze.

The appellant's objection on the grounds that it was not shown that the appellant was present was overruled, the court stating that he thought such evidence to be part of the res gestae. An exception to the court's ruling was reserved.

The witness answered: "She said he was down there trying to rape her."

For the defense the appellant testified that after he had parked his truck he observed the lights of another vehicle. The prosecutrix then got out of his truck on a pretext, and he heard her walking down the gravel road. He called to her but she did not answer. Thereupon he drove down the road. Then according to the appellant: "She was walking by the gravel and she was standing there by a truck, her and I was talking and Carmen Maze pulled up behind. She said, 'Who is that.' I said, 'I don't know.' She said, 'I am going to find out who it is.' She went back and crawled in the truck. They pulled up by the side of her and Carmen said, 'Yes, you are trying to rape her like you did my wife.' I said I wasn't. I said, 'Did you tell him that.' She said, 'I didn't tell him no such.' They went on toward Arab."

The appellant denied that he had at any time forced any physical attention on the prosecutrix, or done anything to which she had not been a willing participant.

On cross-examination he testified that he had driven the prosecutrix to the place in question for the purpose of having sexual relations with her.

Counsel for appellant argues strenuously that the court erred in its ruling permitting the witness Rowe to testify that the prosecutrix had stated to him that the appellant was down there trying to rape her. This statement was made when the prosecutrix met Rowe and Maze after running or stumbling down the gravel road.

The general rule is that in a prosecution for rape, or assault with intent to rape the State may show by the prosecutrix, or the witnesses to whom she complained, the fact that she did make a complaint of having been abused. However such evidence must be limited on direct examination to the mere fact that a complaint was made. The details of the occurrence that may have been stated in the complaint cannot

be shown, nor can the identity of the person accused in the complaint be made known. Hall v. State, 248 Ala. 33, 26 So.2d 566; Allford v. State, 31 Ala.App. 62, 12 So.2d 404; McCluskey v. State, 35 Ala.App. 456, 48 So.2d 68.

However if the complaint is contemporaneous with the main occurrence, and so closely connected with it as to illustrate its character it may be admitted as part of the res gestae. We are clear to the conclusion that under the State's evidence the complaint of the prosecutrix was part and parcel of the main act. Under prosecutrix' testimony, after she succeeded in escaping from the appellant's truck and thus thwarting appellant's avowed intent to ravish her, she was followed by the appellant who was attempting to get her back in his truck. Upon their meeting Rowe and Maze the appellant threatened to kill her if she got into their truck. It was during this continuing time that her complaint to Rowe was made. The court was therefore correct in its conclusion that the complaint should have been admitted as part of the res gestae.

This being so the scope of the evidence is no longer limited to showing a bare complaint, but the complaint itself is admissible. See 44 Am.Jur. Sec. 85; Lacy v. State, 45 Ala. 80; Griffin v. State, 76 Ala. 29; Barnett v. State, 83 Ala. 40, 3 So. 612.

During the direct examination of State's witnesses Maze and Rowe they were each respectively questioned as to the prosecutrix' appearance when they first saw her on the night in question.

To such questions Maze replied:

"Well, she was pale looking and her appearance seemed to be something was wrong," and also, to a separate question, "She looked like she saw a ghost or something."

Appellant's motions to exclude that part of the first answer "and her appearance seemed to be something was wrong," and to exclude the whole of the second answer, on the grounds that same were mere conclusions of the witness, and were invasive of the province of the jury, were overruled. Exceptions were duly reserved to such rulings.

Rowe's answer to such question was: "Well, she was scared."

Appellant's motion to exclude this answer was likewise denied, and exception to the ruling was duly reserved.

The above rulings involve what is commonly called the "Opinion Rule," a fruitful producer of irreconcilable decisions. One able justice of our Supreme Court has poignantly observed "The condition of the authorities on the subject is little better than a state of anarchy."

Illustrative of the jurisprudential mare's nest constructed by the decisions of this court and of our Supreme Court in dealing with this question, we note the following among many decisions:

In Gassenheimer v. State, 52 Ala. 313, it was held that a witness' opinion that the defendant "looked excited" should not have been permitted to go to the jury, while in the State v. Houston, 78 Ala. 576, it is stated: "A witness may testify that a person was excited, but not to the impression made on his mind"; a witness may testify that another appeared angry, Long v. Seigel, 177 Ala. 338, 58 So. 380, or that he talked to another in a pleasant manner, Alabama Great Southern R. Co. v. Frazier, 93 Ala. 45, 9 So. 303; or that another "looked sick," Stone & Best v. Watson, 37 Ala. 279, 280; or that another "seemed to be suffering," and "looked bad," South & N. A. R. Co. v. McLendon, 63 Ala. 266; or that another was a nervous wreck, Bradley v. Lewis, 211 Ala. 264, 100 So. 324; but a witness may not testify that another "looked downcast," McAdory v. State, 59 Ala. 92; or that another was "just wild," Hembree v. State, 20 Ala.App. 181, 101 So. 221; although a witness may testify that another "was not then in a normal state", and " 'didn't seem to realize anything about it; she did not seem to know anything about it.' " Pitts v. State, 19 Ala.App. 564, 99 So. 61.

Further, it has been held that a witness should not be allowed to state that two particular tracks are the same, Terry v. State, 118 Ala. 79, 23 So. 776, but that a witness who has examined the alleged track of the defendant could state that it

"corresponded" with a track made by the defendant the next day, with which the witness compared it by measurement and certain peculiarities. Busby v. State, 77 Ala. 66. However, in Livingston v. State, 105 Ala. 127, 16 So. 801, it was ruled that a witness could not state that particular tracks "corresponded" with the tracks of the defendant.

■ In tracing the historical develop-ment of the Opinion Rule Mr. Wigmore demonstrates that the original objection to "mere opinion" was that it was the guess of a person who had no personal knowledge, and the opinion of an expert was admitted as a necessary exception because his knowl-edge was greater than the jury's; that the old objection to a lay witness' opinion was a matter of testimonial qualification which requires personal observation, and there-fore a lay witness' opinion was received whenever the facts observed by him could not be told in a manner to enable the jury as able as he to draw the inference. This author then states, that the true theory of the Opinion Rule is not that there is any fault to find with the witness himself, or, the sufficiency of the sources of his knowl-edge or the positiveness of his impression, but such evidence is not admitted because not needed. If the facts are in possession of the tribunal the witness' opinion is then superfluous. The principle of exclusion is therefore not one of Testimonial Qualifi-cation, but of an auxiliary policy of avoid-ing delay by eliminating a multitudinous recitation of impressions and rebutting impressions by witnesses when the tribunal itself, with the data before it, is equally competent to form such conclusions. See Wigmore, Vol. VII, 3rd Ed., Secs. 1917, 1918.

This author further points out that there is no virtue in any test attempted to be posited on the mere verbal or logical dis-tinctions between "opinion" and "fact," since such distinction is scientifically im-possible because of the flowing together of the two on any attempted analyses of the terms.

■ This writer suggests that the true test for the exclusion of opinion testimony by a lay witness should be whether the jury can be put into a position of equal vantage with the witness by his account of the data he has observed. See Wigmore, supra, Sec. 1924.

■ Certainly there are certain facts too evanescent and complicated to permit accurate depicting by words, particularly the fact of a person's emotional status. Impressions made on others by such status can often accurately depict the status, where any other method of description would be inadequate. As aptly stated by Stone, J., in Carney v. State, 79 Ala. 14, "Human emotions and human passions are not in themselves physical entities, susceptible of proof, as such. Like the atmosphere, the wind, and some acknowledged forces in nature, they are seen only in the effects they produce. * * * They are proved by what is called opinion evidence—based on experience and observation of the conduct, conversation, and facial expression of oth-ers, in similar emotional conditions. Facial expression and vocal intonation are so legible, as that brutes comprehend them; and yet human language has no terms by which they can be dissected, and explained in detail."

In view of the uncertainty prevailing as to the admission of lay opinion testimony, what workable guide can be suggested?

Hon. J. Russell McElroy, Presiding Judge of the Tenth Judicial Circuit, a profound student of the law of evidence, and par-ticularly of the law of evidence in Alabama, has, in his book The Law of Evidence in Alabama, Sec. 127, strongly advocated that the admission of lay opinion evidence be vested largely in the sound discretion of the trial court. In forwarding such view Judge McElroy writes:

"It is submitted that because of the palpable obscurity, the utter unknow-ableness, of the border line between a so-called statement of opinion and a so-called statement of fact, that the only feasible method of dealing with the borderline cases is to commit the settlement of such cases to the sound discretion of the trial court, and to say that the appellate court shall reverse the decision of the trial court only for

an abuse of discretion that prejudices the party against whom the ruling is made. This revision would not be a radical departure from accustomed judicial methods; such a revision would be in keeping with numerous accepted precedents of the law vesting a discretion in the trial court in making decisions upon borderline questions of practice and procedure including evidence. This idea of committing the admissibility of a witness' testimony in terms of opinion to the discretion of the trial court has already made measurable headway in many states. McCormick, Some Observations Upon the Opinion Rule and Expert Testimony, 23 Texas Law Review, p. 109, 112, note 12. Indeed, there is one Alabama decision embracing the principle of trial-court discretion here advocated namely, Dersis v. Dersis, 210 Ala. 308, 98 So. 27, at which it was said concerning the admissibility of a statement of opinion by a lay witness: 'A certain discretion is rightly vested in the trial courts in directing the search for the truth by this class of evidence, and their action should not be disturbed unless it is apparent some right of a party has been invaded or suppressed.' "

\* \* \* \* \* \*

"This plea for the express investiture of a reasonable measure of discretion in the trial court is supported by the attitude of the appellate courts towards what might be called statements of relatively minor opinions by a witness. Many have been the times when the appellate courts have shunted or strong-armed out of the way a contention that a statement by a witness should have been excluded by the trial court as being in violation of the opinion rule, by asserting simply that the statement was a 'shorthand rendering of fact' or the statement of 'a collective fact.' [Marshall v. State,] 219 Ala. 83, 121 So. 72, 63 A.L.R. 560; [Johnson v. State,] 15 Ala.App. 194, 72 So. 766; [South & North A. R. Co. v. McLendon,] 63 Ala. 266. We find such statements as this, taken from Mobile, etc.

R. Co. v. Hawkins, 163 Ala 565, 585, 51 So. 37.' "

We also find that Somerville, J., in Pope v. State, 174 Ala. 63, 57 So. 245, 250, expressed the same general idea in an opinion in which the majority of the court held admissible testimony of a witness that a specified mule would have made a track similar to the mule tracks which the witness tracked from the defendant's house. After reviewing the state of the decisions on the subject Somerville, J., wrote:

"And we are unwilling to embarrass trial courts by any further extension of the rule of exclusion, at least as a basis for the reversal of judgments on appeal."

However, on rehearing, the court reversed and remanded the cause because the evidence against the defendant was entirely circumstantial, and the court was unable to declare that certain other evidence erroneously admitted was not prejudicial.

■ We think the rule investing trial courts with reasonable discretion as to the reception of lay opinion evidence will tend to alleviate some of the problems with which such courts are confronted when their rulings are invoked on this type of evidence. While such rule lacks the perfection of absolute certainty, yet within certain limits the experienced trial judge, and lawyer, will find little difficulty in its application. Certainly the troublesome twilight zone of borderline situations should be greatly illuminated by such a rule.

■ Being of the conclusions above expressed we hold that no reversible error resulted from the rulings in the above instances.

■ The requested written charges which were refused by the court were refused without error in that all of such refused charges were adequately covered either by the court's oral charge, or by other requested charges given at the request of the appellant.

Affirmed.