128 So.2d 109

**Dooley PRICE**

v.

**STATE.**

**5 Div. 570.**

Court of Appeals of Alabama.

March 7, 1961.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

Walter C. Hayden, Jr., Clanton, for appellant.

PRICE, Judge.

This appeal is from a conviction for the offense of rape, with punishment fixed at imprisonment for 20 years.

It was agreed by counsel for appellant and the solicitor that Mrs. Laid Kirkland, the person alleged to have been ravished, was mentally incapable of testifying at the trial and she was not called as a witness.

For the state, Mrs. Irene Martin testified that on October 20, 1958, she lived in an apartment in the house occupied by Mr. and Mrs. Kirkland. At that time Mrs. Kirkland was unable to walk well and was not able to speak loud enough to be easily understood. Between 1:00 and 2:00 p. m. of that day the witness saw defendant stagger up the steps and enter the Kirk-

lands' apartment. She heard him ask whether Irene or Mr. Kirkland were there, but was unable to hear Mrs. Kirkland's reply; that after defendant had been in the room about twenty minutes she heard a scuffling sound and heard Mrs. Kirkland say, "Don't do that"; that she heard no further sound and after defendant had been there for about an hour he left by the front door; that as he went out he said, "Hell, grandma"; that as he went staggering down the steps and toward the road, he was putting his shirt down inside his trousers and buttoning his trousers; that after defendant had gone she went into the Kirkland apartment; that Mrs. Kirkland's clothes were off, and her breasts were red and that the spread on the bed was wrinkled. The witness was uncertain as to Mrs. Kirkland's mental condition on October 20, 1958, but she did know her mental condition grew worse after that date and at the time of trial she could not identify people and did not know the day of week, month or year.

Dr. Joe H. Johnson testified he examined Mrs. Laid Kirkland about 3:00 o'clock on the afternoon of October 20, 1958. He found her to be an elderly woman who had some weakness and infirmity due to light strokes and was in a highly excited mental state; that he examined her female organs and found the presence of sperm growth which indicated she had had sexual intercourse; that he sent a specimen of the spermatozoon to the State Department of Toxicology, Auburn, Alabama, and he personally examined another specimen and identified it as spermatozoon; that he found no bruises, abrasions or skinned places on her body; that it was remotely possible, though not probable, that the specimen he took from Mrs. Kirkland could have been placed there by means other than sexual intercourse.

Wendell L. Sowell testified that he was a toxicologist for the State of Alabama at Auburn; that on October 22, 1958, he received from Dr. Joe H. Johnson a specimen which, upon examination he found to be spermatozoon.

Matt Kirkland testified he was 65 years of age and was the husband of Laid Kirkland, who was 62 years old; that she was in better physical condition before October 20, 1958, than at the time of trial; that on that day he left home at 10:30 a. m. and returned at noon; that he left again at 1:00 p. m., and returned at 1:30 p. m; that he did not see the defendant that day and did not drive him to Three Point Grocery and back home; that he had not had sexual relations with his wife for a year prior to October 20, 1958; that when he returned to his home at 1:30 p. m., she made complaint to him that something had happened to her while he was gone; that later in the afternoon she was taken to Dr. Johnson for an examination; that prior to October 20, 1958, his wife had had arthritis but no heavy strokes.

Deputy Sheriff Erskine Popwell testified he arrived at the Kirkland home at 2:30 p. m.; that the spread on the bed was wrinkled and had on it two moist spots each of which was about the size of a silver dollar; that at that time Mrs. Kirkland made complaint to him that something had happened to her; that he arrested defendant that afternoon after finding him in bed at his house, which was about 200 yards from the Kirkland residence.

Mrs. Clarence Burnett testified that Mrs. Laid Kirkland was her mother; that prior to October 20, 1958, her mother had a light stroke, and that she was weak and her mind came and went; that at the time of trial she was much worse physically and mentally than on October 20, 1958; that she reached her parents' home about two or a little after two on the afternoon in question, at which time her mother told her something had happened to her.

The defendant, in his own behalf, testified he lived at Route 5, Clanton, Alabama, and was 46 years of age; that on the early morning of October 20, 1958, he hired Matt Kirkland to drive him to Three Point Grocery; that Mr. Kirkland took him to the grocery and back to defendant's house; that after returning home he drank a cup

of coffee and then drank about half a pint of whiskey; that he went to sleep at 10:00 a. m., and slept until the officers awakened him that afternoon; that he did not go to the Kirkland home between 12:00 and 2:00 o'clock and did not rape Mrs. Kirkland; that October 20, 1958, was Tuesday, but he was not working that day because he had been drinking constantly since the preceding Thursday night; that he was a frequent drinker but that when he was on drinking sprees he never did anything he could not remember. He denied that he had ever been convicted of the offense of petit larceny.

On defendant's motion the trial court excluded from the jury's consideration the testimony of the clerk of the circuit court to the effect that official records of the Circuit Court of Chilton County contained a bench note showing that on October 8, 1947, one Dooley Price, who was charged with grand larceny, pleaded guilty to petit larceny and was fined twenty-five dollars and costs.

Appellant complains of error in the admission, over defendant's objection, of evidence by the state's witnesses that Mrs. Laid Kirkland made complaint to them. These witnesses were Matt Kirkland, Mrs. Irene Martin, Erskine Popwell and Mrs. Clarence Burnett. In each instance the witness was asked whether Mrs. Kirkland had made complaint that "something had happened to her," and the witness answered "Yes." Appellant argues that evidence of the fact that the alleged victim complained of an assault on her person is admissible only as corroboration of testimony by the prosecutrix, and is inadmissible where, as here, the prosecutrix is incompetent to testify.

 It is a well-established rule that the fact that the victim of a rape made complaint soon after the occurrence may be shown either by the testimony of the prosecutrix or by persons to whom the complaint was made. Daniell v. State, 37 Ala.App. 559, 73 So.2d 370, certiorari denied, 261 Ala. 145, 73 So.2d 375; Barnett v. State,

83 Ala. 40, 3 So. 612. Such testimony is not admissible as proof of the commission of the crime, but is "received in corroboration of the testimony of the prosecutrix only as proof of the fact that such complaints were made." Gaines v. State, 167 Ala. 70, 52 So. 643. If the complaint constitutes part of the res gestae, not only the fact that complaint was made but the complaint itself may be shown. Daniell v. State, 37 Ala.App. 559, 73 So.2d 370, and cases there cited.

In the Annotation in 157 A.L.R. at page 1361, we find the following:

"There is a conflict of authority as to whether, where the alleged victim of rape or a similar offense is incompetent to testify, evidence of the fact that she made complaint, if not a part of the res gestae, is admissible.

"Apparently because of the possibility of the miscarriage of justice in some cases where the victim was incapacitated from testifying, the ordinary rules excluding the victim's complaints except to support or corroborate her testimony have been dispensed with and an exception to these rules has been allowed to the extent of admitting testimony that she made a complaint."

Cases from other jurisdictions are cited in the Annotation in which such evidence was held admissible. In most of said cases the victim was too young to testify. See also the Annotation in 2 A.L.R. at page 1523.

We find no authority in which the exact question here presented has been determined. Several cases from other jurisdictions are cited in the above Annotations. But, as was said by the court in People v. Figueroa, 134 Cal. 159, 66 P. 202, 204:

"The few authorities that relate to children incompetent to testify and other incompetents seem to go no further than to exclude their declarations as to what occurred, leaving out the question as to whether the fact that complaint was made by them may be shown."

See also State v. Washington, 104 La. 57, 28 So. 904; Underhill's Criminal Evidence, Sec. 758, p. 1742.

In Ellis v. State, 244 Ala. 79, 11 So.2d 861, 867, the court said:

"The application of the rule of res gestae depends on whether the circumstances are such that it may be affirmed as reasonably certain that '(1) the declarations were produced by, or were instinctive of the occurrences to which such exclamations, declarations or outcry relate, or which give character or characterize the act or principal fact for decision, rather than a retrospective narrative of such occurrences; (2) the declarations must be contemporaneous with the main facts and so closely connected with it as to illustrate its character.'"

In 37 Words and Phrases, p. 222, this statement appears:

"There is no hard and fast rule fixing with certainty the length of time beyond which a court may say, as a matter of law, that a statement made or an act done is not a part of the 'res gestae.' Roushar v. Dixon, 2 N.W.2d 660, 662, 231 Iowa 993.

■ Generally whether evidence should be admitted as part of the res gestae must be determined from the particular facts of the case and the character of the crime. Pugh v. State, 30 Ala.App. 572, 10 So.2d 833.

■ In view of the promptness of the complaints shown here, and the condition of the alleged victim, we think evidence of the fact that a bare complaint was made was admissible both as a part of the res gestae and as an exception to the general rule excluding evidence of complaints except to corroborate the prosecutrix's testimony given on the trial.

■ Furthermore, the objection to the question propounded to Mrs. Irene Martin, interposed after the witness had answered, came too late. Inman v. State, 39 Ala. App. 496, 104 So.2d 448.

In Taylor v. State, 249 Ala. 130, 30 So. 2d 256, 258, the court said, " * * * where there is a reasonable inference deducible from the evidence of the existence of the corpus delicti, the court should submit the question of sufficiency and weight of the evidence tending to support that inference for the jury's consideration."

Under the evidence presented the defendant's motion to exclude the state's evidence was properly overruled and the requested affirmative charge refused without error.

■ Based upon the testimony, it is our opinion the ruling of the court refusing to grant the motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict should not be disturbed. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

We find no reversible error in the record and the judgment is affirmed.

Affirmed.