TYSON, Judge.
Woodrow Gordon Champion was charged in a two-count indictment, to which no demurrer was interposed, with indecent molestation or attempt to take indecent liberties with the prosecutrix, a female child under sixteen years of age. Appellant entered a plea of not guilty, and trial was entered upon with a verdict being returned by the jury finding the appellant guilty as charged in the indictment. The trial court then entered judgment, which set sentence at five years imprisonment in the peniten *1357 tiary. The appellant filed a motion for new trial, which was overruled following a hearing thereon. From the judgment of the court, sentencing the appellant, and the overruling of his motion for new trial, the appellant prosecutes this appeal.
The prosecutrix testified she was twelve years of age and formerly resided, on July 1, 1978, with her mother and father in a trailer park in the City of Montgomery. She testified she attended a junior high school in Montgomery.
The prosecutrix indicated that, shortly after noontime on Saturday, July 1, 1978, Mr. and Mrs. Champion, who lived next door to her parents at the trailer park, came over and began having some drinks and listening to their stereo player. Later that afternoon, the prosecutrix stated, she went next door to the Champions’ house trailer and there spent about one hour watching television. She then returned to her parents’ house trailer where her parents were still entertaining the Champions. She stated that she stayed there about thirty minutes, then went back to the Champions’ trailer. She stated that she was wearing a pair of blue jeans, a pullover shirt, and her panties. She stated that she dozed off to sleep, lying on the sofa, watching television. She stated that she was awakened suddenly by someone who was removing her blue jeans and pants and thought at first it was her mother. She looked up and recognized the appellant, Woodrow Gordon Champion, and “he had his mouth about one-half inch away from my below part” (R. p. 12). The prose-cutrix stated that she attempted to push Mr. Champion away from her, but that she was frightened and that he turned her over and “he tried to put his mouth on my behind” (R. p. 13). She stated that she yelled, “Stop,” and started to pull her clothes back on, and the appellant stood up and put the bedspread over her, then went back to his bedroom and went to bed. The prosecutrix stated that she waited a few minutes and went to her parents’ trailer. She knocked lightly on the door because she was afraid the appellant was following her. She stated she heard her mother say, “I will be to the door in a minute,” and upon being admitted, she was crying real bad and told her mother what had happened. She stated that her mother then awakened her father and telephoned the Montgomery police.
A certified copy of the prosecutrix’s birth certificate was admitted and showed her date of birth to be November 17, 1965.
On cross-examination, the prosecutrix testified she and her parents had moved since this incident to another section of Montgomery, and that she was the only child of her mother and father. The prose-cutrix also stated that the appellant was living with a woman who called herself Mrs. Champion and they had a two-year old boy. She said that she had been asked to go back to the Champions’ trailer and look after their little boy. She stated that the Champions had visited with her parents for about five or six hours when the incident occurred, and that she did not have supper that evening. She related that she saw her father and Mr. Champion go to the liquor store earlier that afternoon and then come back. She stated that she had fallen asleep in the Champions’ trailer after watching television before being aroused by Mr. Champion, the appellant, and that, after removing her blue jeans and pants, the appellant had put “his mouth real close to me, and he stayed there five or ten seconds,” that she was not sure how long.
S. H., the mother of the prosecutrix, stated that she and her husband had resided at a trailer park in the City of Montgomery on July 1, 1978. She stated that the appellant and his wife lived in a trailer next door and had come over during the afternoon and evening of July 1 for some drinks and to listen to the stereo. She stated that her daughter had gone next door to watch television and to look after the Champions’ twenty-two month old baby. She stated that her daughter returned shortly after 12:00 midnight and rapped on the door. She stated that she had on a pullover shirt and a pair of blue jeans and her panties when she returned. She stated that her daughter had gone to sleep earlier that evening, lying on the sofa at the Champí- *1358 ons’ trailer. Mrs. H. indicated that Mrs. Champion had placed a bedspread over the prosecutrix when they realized she was asleep, and that she had let her stay there rather than awaken her. She stated that her daughter had knocked “kind of lightly” on the door because she was afraid and “she thought the appellant, Mr. Champion, was behind her and going to get her.”
Mrs. H. stated that, after her daughter told her what happened, she awakened her husband and telephoned the Montgomery police.
Montgomery Police Officer James S. Griffin testified that, on the early morning of Sunday, July 2, 1978, he answered a call to go to a residence in the southwestern section of the City of Montgomery. He stated that he went to the house trailer of Mr. and Mrs. R. H. After talking with this family, he went next door, at about 2:00 a. m., to the house trailer of the appellant and knocked on the door. He stated that no one answered and that he waited a few minutes until another officer joined him, then he went back over with Police Detective Island and Officer Bloodsworth, and that, after knocking again and getting no response, Officer Island opened the door and there observed the appellant kneeling on a sofa, looking through the blinds.
Montgomery Youth Aid Detective Steve Island stated that, in the early hours of Sunday, July 2, 1978, he went to the trailer home of Mr. and Mrs. R. H., which was located in the southwestern section of Montgomery. He stated that he talked with Mrs. H. and her daughter, then went next door with Corporal Griffin and Officer Jerry Bloodsworth, and his partner. After a series of knocks with no response, Island stated that he opened the door to the appellant’s house trailer and there observed the appellant kneeling on the sofa, peering through the blinds. He stated that the officers then placed Champion under arrest shortly after 2:00 a. m. for questioning. Officer Island stated that he “detected the odor of beer on the appellant’s breath.” The appellant’s motion to exclude the State’s evidence was overruled.
Woodrow Gordon Champion testified that, on July 1 — 2, 1978, he and his common law wife, Ella Mae Cree, lived in a house trailer in the southwesterh section of Montgomery. He stated that Mr. and Mrs. R. H. lived next door to them in a house trailer with their young daughter, the prosecutrix. He stated that soon after the noon hour, Mr. H. brought a drink over to him at his trailer, and after drinking this he invited him to come over to his trailer to listen to the stereo and have some drinks. He stated that, during the afternoon, he and his wife, and the H.’s, drank one-half gallon of liquor. He stated that he and his wife returned to their trailer about 10:00 p. m. to put the baby to bed, and that they then returned to their next door neighbor’s for more drinks. He stated that about midnight he and his wife again returned to their trailer and she fixed him something to eat, and they went to sleep. He stated that about a couple of hours later he heard someone knocking on the door to his trailer and that he got up and was seated on the sofa, looking out the window, when some officers came in. He denied ever removing any of the prosecutrix’s clothing or attempting to do so.
On cross-examination, the appellant admitted to the following convictions: Burglary, three to five years, Georgia, June 26, 1954; Burglary, two to five years, Georgia, September 11, 1959, which was reduced to one year and $50.00 fine; Interstate Transportation of stolen vehicle, two years, Georgia, February 9,1969; Grand Larceny, eighteen months, Georgia, February 24, 1971.
Mr. Champion indicated that he and his wife, together with Mr. and Mrs. H., drank two one-half gallons of whiskey on July 1, 1978. He stated that the only time he went back to his trailer was to go to bed and eat a bowl of soup, which his wife fixed. He again denied trying to undress the prosecu-trix or attempting to molest her.
There was no exception to the trial court’s oral charge, and the trial court gave twelve of the appellant’s written requested charges, denying only two affirmative charges and two others dealing with the weight of the evidence.
*1359 i
Prior to trial, the appellant filed a plea of former jeopardy, which is as follows, omitting formal parts (R. p. 69):
“PLEA OF FORMER JEOPARDY
“Comes the defendant by his attorneys, Carlton & Carlton, and for plea says: “He has once been in jeopardy for the offense of which he is now charged in this indictment and that, at the September 18, 1978 session of the Circuit Court of Montgomery County, Alabama, the defendant was in due form arraigned and pleaded not guilty to the said offense charged, which was in substance as follows: the same two-count indictment which is the subject matter of the present offense charging the defendant with the offense of child molestation of one . H and that the defendant was thus put upon trial for such offense and, after he had pleaded to the same and was thus in jeopardy, that a jury was duly struck and sworn, that opening statements were made by both the counsel for the state and for the defense, that the indictment was read, and that the Court on its own motion declared a mistrial. “All of which the defendant is ready to verify, and he prays judgment of this court that he be discharged from the premises in the present indictment specified.
“Dated this the 20th day of September, 1978.
S/ C. Collier Carlton. Jr. C. Collier Carlton, Jr.
“CARLTON & CARLTON
25 Washington Avenue Montgomery, Alabama 36104
“SWORN to and SUBSCRIBED before me on this the 20th day of September, 1978.”
In addition, just prior to trial, the record reveals the following colloquy (R. pp. 3, 4, 5):
“MR. CARLTON: We have filed the plea of former jeopardy. Now, it is my understanding of the Taw that the State is then required to bring it to issue which Mr. Pool has done by filing a motion to strike. It’s then my understanding that we have a right to a trial on that issue. However, I have prepared a joint stipulation that we would offer the Court. Mr. Pool has not yet stipulated to it. What we would offer to do is to waive any jury trial on the issue and submit it to the Court so that the issue of the plea of former jeopardy will be determined by the Court, yes, sir, and then instead of offering any evidence, I know the Court is well aware there are official proceedings of the basis of our
[[Image here]]
“COURT: I take judicial knowledge of what took place.
“MR. CARLTON: Yes, sir. And that’s the stipulation that I have prepared.
“MR. POOL: I would sign it, Judge, on the condition that we enter into the record two more items. Number one, after the jury was struck the other day and it came to the attention of the Court that the law was that a motion to challenge for cause jurors over sixty-five had been erroneously denied that there was remaining on the jury one juror over the age of sixty-five that was juror number 68, Mr. Drury Sumner. There was, in fact, a disqualified juror, a juror who was on the jury wrongly. So, he was on that jury and he should have been off the jury.
“COURT: That’s right. I think I made a mistake in that.
“MR. POOL: All right. Now, the second thing is when the mistrial was entered on the Court’s own motion and I think the record is clear that it was the Court’s own motion and not the motion of the District Attorney and not the .
“COURT: No, it was my own motion.
“MR. POOL: All right, sir. Now, when that motion was entered there was no objection whatsoever raised by Mr. Carlton on behalf of the Defendant. I want those two things in the record and if they are, I think they already were, if they are, then I’ll sign this stipulation.
*1360 “COURT: I think that substantially states it.
“MR. CARLTON: I’ll stipulate that Mr. Sumner did remain on the jury .
“MR. POOL: And he is age 72.
“COURT: He was over sixty-five.
“MR. CARLTON: Yes, sir. And I stipulate that I did not make any objection
“MR. POOL: To the mistrial.
“MR. CARLTON: ... to the mistrial.
“COURT: Very well, then. That’s all in the record.
“MR. POOL: And I have filed a motion to strike this plea of former jeopardy.
“MR. CARLTON: Judge, this will be the plea and that’s his motion to strike and there’s the stipulation right there. I believe that makes our record straight, Judge. So the facts are before you.
“COURT: They are not really in dispute.
“MR. CARLTON: Yes, sir, that’s true.
“COURT: Gentlemen, I’ve given consideration to this matter already and I am going to grant the'State’s motion.”
Appellant asserts that the trial court erroneously granted the State’s motion to strike his plea of former jeopardy, and that such should have been sustained by the court below.
It is settled in Alabama that the mere arraigning of the appellant and pleading to the indictment does not place him in jeopardy. Parker v. State, 51 Ala.App. 362, 285 So.2d 526; Bassing v. Cady, 208 U.S. 386, 28 S.Ct. 392, 52 L.Ed. 540.
The rule applicable to the plea entered in this cause is well stated in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961), as follows:
“Since 1824 it has been settled law in this Court that ‘The double-jeopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.’ Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146; Keeri v. State of Montana, 213 U.S. 135, 137-138, 29 S.Ct. 469, 470, 53 L.Ed. 734; see Ex parte Lange, 18 Wall. 163, 173-174, 21 L.Ed. 872; Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199. Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant’s consent and even over his objection, and he may be retried consistently with the Fifth Amendment. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Dreyer v. People of State of Illinois, 187 U.S. 71, 85-86, 23 S.Ct. 28, 32-33, 47 L.Ed. 79. It is also clear that ‘This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served * * *,’ Brock v. State of North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456, and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. See Lovato v. State of New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244; cf. Wade v. Hunter, supra. In the Perez case, the authoritative starting point of our law in this field, Mr. Justice Story, for a unanimous Court, thus stated the principles which have since guided the federal courts in their application of the concept of double jeopardy to situations giving rise to mistrials:
“ ‘ * * * We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circum *1361 stances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. * * * ’ 9 Wheat., at page 580.”
See also Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); Thompson v. United States, 155 U.S. 271,15 S.Ct. 73, 39 L.Ed. 146 (1894); § 12-16-233, Code of Alabama 1975.
Clearly the trial court properly granted the State’s motion to strike the appellant’s plea of former jeopardy in this cause as no evidence had been presented, and the trial court was endeavoring to give the appellant a jury from which no issue could be made as to qualification because of age.
II
Appellant calls attention to the testimony of the prosecutrix, saying that she was allowed to erroneously give details of her complaint to a third party into evidence.
We have carefully examined the two instances referred to (R. pp. 10-15) and find that in the prosecutrix’s testimony on these pages, she simply answered the questions of the district attorney regarding the assault on her by the appellant, Champion, and the trial court sustained the appellant’s attorney’s objection (R. p. 15) concerning the admission of any details to her mother. Prosecutrix was simply allowed to state that she made a complaint, but did not admit any details. We are of the opinion that this ruling was correct.
Secondly, appellant’s counsel refers us to R. pp. 32-33, wherein Mrs. H., her mother, was relating the girl’s knocking on the door, “kind of lightly, and she was crying when she let her in,” but that again the trial court merely allowed the mother to state that a complaint was made and the girl was crying, and did not knock too loudly because “she was afraid he was behind her and going to get her” (R. p. 33). This does not constitute “details of the complaint, but rather a part of the res gestae of the offense in question,” and, as such, was properly admitted. Price v. State, 41 Ala. App. 239, 128 So.2d 109 (1961); Ciervo v. State, Ala.Cr.App., 342 So.2d 394, cert. denied, Ala., 342 So.2d 403 (1976).
We are of the opinion that the trial court’s rulings in this cause were correct.
Ill
Appellant argues that the trial court erroneously overruled his motion to exclude the State’s evidence and his two requested affirmative charges, requested in writing, in the appellant’s behalf at trial, also his motion for new trial, challenging the sufficiency of the State’s evidence.
The appellant asserted the same matters in this motion for new trial, which was overruled by the trial court.
We have carefully considered these matters and are of the opinion that the State did present a prima facie case, thus, the trial court’s rulings on these matters were correct. Price v. State, 41 Ala.App. 239, 128 So.2d 109 (1961); Ciervo v. State, Ala.Cr.App., 342 So.2d 394, cert. denied, Ala., 342 So.2d 403 (1976); Westfaui v. State, 56 Ala.App. 519, 323 So.2d 404, cert. denied, 295 Ala. 427, 323 So.2d 406 (1975).
*1362 As to two remaining written requested charges, which were refused by the trial court, these charges were either properly refused under the evidence, or otherwise fairly and adequately covered by the trial court in its oral charge to which no exception was taken, or the several written charges given at the request of the appellant. § 12-16-13, Code of Alabama 1975; Ingram v. State, Ala.Cr.App., 356 So.2d 761 (1978), thus, no error appears.
We have carefully examined this record and find no error therein. The judgment is therefore
AFFIRMED.
All the Judges concur.