TYSON, Judge.
The indictment charged Holly Golden, alias Holly Goeden, with the possession of heroin. The case was tried before a judge, without a jury, and he found the appellant guilty as charged and set punishment at fifteen years imprisonment.
David Green of the Montgomery Police Department testified that on May 17, 1977, he received a telephone call from a confidential informant who told him that a black male was dealing in heroin at the Travel-odge Motel on Federal Drive in Montgomery, Alabama. On May 18, 1977, Detective Green received another telephone call from the same confidential informer. He told Detective Green that the black male’s name was Wayne and that he had personally seen a quantity of heroin in Wayne’s possession. Also, the informer told him that Wayne was driving a silver Thunderbird .with a Georgia license plate, LCC-744. Detective Green related that the informer also told him that there was a white female, named Anna, staying with Wayne at the motel. The informer also brought Detective Green some heroin which he had purchased from Wayne the previous day (May 17, 1977). Detective Green stated that he conducted one test on the substance which the informer brought him and found it to contain heroin. Detective Green testified that around 10:00 a. m., on May 18, 1977, Captain Hudson came to his office and told him that he also had received information from a confidential informer which matched the information which he (Green) had received. *1129 According to Detective Green, Captain Hudson told him that he was also told by his informer that most of the heroin was still in the motel room with a white female (R. pp. 30-31). Detective Green then called the Travelodge Motel and spoke with one Mr. Weldon Doe, who identified himself as the motel manager. Mr. Doe confirmed that he had an Anna Conte (white female) and a Wayne Blaine (black male) registered at the motel; that Anna Conte had listed the tag number of her vehicle on the registration card as LCC-744; and that the tag registered was displayed on a silver Thunderbird. Detective Green stated that he then assisted Detective Nichols in placing a transmitter on Detective Farrior. Then he and Detective Nichols drove out to the Tra-velodge Motel with a receiver so they could monitor Detective Farrior’s activities. He testified that he and Detective Nichols •parked their unmarked car on the northern side of the motel where they could observe persons entering or leaving room 105, which was the room number he had received from Mr. Doe as Anna Conte’s room. He stated that Detective Farrior then drove up in his private unmarked car and parked in front of room 105. Detective Farrior then got out of his car and knocked on the door of room 105. According to Detective Green, the transmitter on Detective Farrior was apparently not functioning very well and therefore the transmission being received in his car was somewhat broken. He stated that he observed Detective Farrior conversing with someone in the room. Detective Farrior then went back to his car where he was joined by a white female some thirty seconds later.
Detectives Green and Nichols, in an effort to pick up the radio transmission from Farrior, then moved their car around to the other side of the motel. Upon relocating their car, Detective Green testified, he was able to pick up part of the conversation between Detective Farrior and the white female. The conversation, Green stated, was mostly the white female asking Detective Farrior how he knew Wayne. While he and Detective Nichols were monitoring the conversation, according to Green, a white female in her late thirties came through the breezeway and walked directly in front of their car. The white female then looked directly at the two detectives, turned around, held a brief conversation with a maid, and proceeded to walk back in the direction from which she came. Although Detectives Green and Nichols were in an unmarked car, they both felt that the white female knew they were policemen, since their car had a police radio antenna mounted on the back, blue lights and a siren horn mounted behind the front grill, and the receiver antenna mounted by a magnet on the top of the car with a wire running from it through the driver’s window. Detective Green identified the appellant as the white female who walked in front of their car. During this time, Detective Farrior was still conversing with another white female in his private car.
Detectives Green and Nichols then drove their car around the corner of the motel where Detective Green got out of the car and followed the appellant back to room 105. Detective Green testified that the appellant knocked on the room door and was let in, after which the door was slammed shut. Detective Green stated he knocked on the door several times and announced that he was a police officer. After hearing water running and a toilet flush in room 105, Detectives Green and Nichols attempted to knock down the door, but were unable to do so. Both stated that they noticed the room window was slightly open, so they raised it and crawled into the motel room. Detective Green entered the bathroom area of the room and found the appellant, along with another white female, later identified as Anna Consalvo. The two females were emptying bags of heroin in the toilet and the bathtub. Both were then placed under arrest (R. pp. 45-47).
On cross-examination, Detective Green testified that his confidential informer had never given him any information in the past that had lead to any arrests prior to May 18,1977. Also, according to Green, the informer never stated to him that he had been in; or seen heroin in, any motel room.
*1130 Montgomery Police Officer James E. Nichols’ testimony was substantially the same as that of Detective Green’s with a few additions. Detective Nichols stated that he heard part of the conversation between Detective Farrior (who was wired with a transmitter) and the first white female while they were in Farrior’s car. According to Detective Nichols, Farrior told the white female that he had two hundred dollars with him and that he wanted to buy some heroin. The white female told Farri- or that all she had were samples which she was giving away (R. p. 118).
Weldon Doe, Manager of the Travelodge Motel, testified that on May 18, 1977, he had a telephone conversation with Detective Green concerning whether or not he had anyone registered under the names of Wayne and/or Anna. Mr. Doe informed Detective Green that there was an Anna Corite (white female) in room 105, and a Wayne Blaine (black male) in room 306. He also told Detective Green that Anna Conte registered a Thunderbird, license number LCC-744, on her card and had paid him for rooms 105, 108, 204, and 306.
Montgomery Police Officer Michael M. Farrior’s testimony was substantially the same as that of Detectives Green and Nichols. Detective Farrior stated that, while he was talking with the first white female in his car, the defendant came out of room 105, walked around the corner, came back, and went back into the room. Detective Farrior stated that Detective Green followed her back to room 105 and gained entry through the partially open window after unsuccessfully trying to get in through the door.
Alan Adair, criminologist with the Department of Toxicology, testified that on May 18, 1977, he went to room 105 of the Travelodge Motel in Montgomery, Alabama. Therein he found a white powdery substance, later determined to contain heroin (valued between $175,000 and $250,000), located in a white plastic trash can, next to the toilet on the floor, in the toilet bowl, in the drain pipe underneath the toilet bowl, on the bathtub faucet, in the crevices between the ceramic tile, and some particles floating in the air.
I
The sole issue presented by the record of this appeal is whether or not the seizure of the heroin in question was the product of an unlawful search inasmuch as there was no search warrant.
In Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973), Mr. Justice Bloodworth enumerates the exceptions to the Fourth Amendment’s warrant requirement in this language:
“(1) In ‘plain view,’ see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
“(2) With ‘consent’ voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
“(3) As ‘incident to a lawful arrest,’ see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
“(4) In ‘hot pursuit’ or ‘emergency’ situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo.1970) 454 S.W.2d 481;
“(5) Where ‘exigent circumstances’ exist coincidental with ‘probable cause’ (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and,
“(6) In ‘stop and frisk’ situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).”
The search in this case falls within the fifth exception to the warrant requirement outlined above for the reasons as set out below.
PROBABLE CAUSE
The unnamed informer, on May 18, 1977, told Detective Green that a black male by *1131 the name of Wayne and a white female by the name of Anna were staying at the Travelodge Motel on Federal Drive in Montgomery, Alabama; that they were driving a silver Thunderbird, license plate No. LCC-744; that he had seen heroin on the person of Wayne, and that he had purchased some of the heroin from him. The informer turned the heroin over to Detective Green, who ran several tests on the substance and found it to contain heroin. Detective Holland stated that he had obtained the same information from another informer and that this informer also told him that there was a lot more heroin which the white female, Anna, had in her motel room.
On May 18, 1977, while seated in his unmarked car at the motel, Detective Farri- or discussed a heroin purchase with a white female, named Anna Conte, who was occupying room 105 at the motel and which was paid for by her. Ms. Conte informed Detective Farrior that all she had at the time were samples of heroin which she was giving away. While discussing the transaction with Ms. Conte, Detective Farrior observed the appellant leave room 105 and walk toward the vicinity of Detectives Nichols’ and Green’s automobile. Detective Nichols heard the conversation between Farrior and Ms. Conte concerning the heroin transaction and also saw the appellant leave the vicinity of room 105, approach the officers’ vehicle and walk back to this room where she gained entry after knocking several times.
Detective Green testified that, after he followed the appellant back to room 105, he heard a toilet flushing and water running in the room while he, Green, was standing on the walkway outside room 105.
Detective Green stated he had learned from experience that many drug dealers dispose of narcotics by flushing them down the toilet and emptying them in the lavatory. After Detective Green failed to gain entrance to the room by knocking, he entered through a partially open window. Once inside the room, Detective Green found the appellant and one other white female emptying a white powdery substance in the toilet and bathtub.
In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the Supreme Court of the United States said that:
“In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
“ ‘The substance of all the definitions’ of probable cause ‘is a reasonable ground for belief of guilt.’ McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790] 267 U.S. at page 161, 45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this ‘means less than evidence which would justify condemnation’ or conviction . . ..”
Clearly, the officers in this case had probable cause to believe that heroin was in room 105 of the Travelodge Motel, Montgomery, on the date in question, based upon the facts within their knowledge, as outlined above. Nor can it be said that the informer in this case did not meet the often referred to veracity and basis of knowledge test as laid out by the Supreme Court of the United States in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The informer’s veracity was established by his declaration against interest (purchasing the heroin and turning the substance over to the police). As to the basis of the informer’s knowledge, the above facts demonstrated that the informer drew his conclusion of criminality in a reliable manner. Also, the Alabama courts have found that, even where less detailed information from a reliable source has been received, it may also be used as grounds for affirming probable cause where the key elements of the tip are verified or corroborated. Payton v. State, 47 Ala.App. 347, 254 So.2d 351 (1971); State ex rel. Attorney General, 286 Ala. *1132 117, 237 So.2d 640 (1970). In the instant case, Detective Green had the information he had obtained from the informer verified by Mr. Doe, the manager of the Travelodge Motel, and later by Detective Nichols, who personally overheard the negotiation of a Heroin transaction between Detective Far-rior and Ms. Conte just before the search.”
EXIGENT CIRCUMSTANCES
The officer in the present case was confronted with an emergency situation. The delay necessary to obtain a search warrant threatened the destruction of evidence. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therefore, probable cause, coupled with exigent circumstances (the destruction of evidence), justified the warrantless search of appellant’s motel room under the fifth exception to warrantless searches listed in Daniels, supra.
We have carefully examined this record and find no error. The judgment is
AFFIRMED.
All the Judges concur.