A jury found appellant guilty of possession of heroin. The trial court sentenced him to imprisonment for fifteen years.
A large part of the record (more than one hundred pages) pertains to a motion to suppress certain evidence, which motion was filed and heard before the trial of this case. The court overruled the motion, and the evidence sought to be suppressed was admitted during the trial. It related to the circumstances of the finding by law enforcement officers of a large quantity of heroin at the Travelodge Motel on Federal Drive in Montgomery, Alabama, on May 18, 1977. In the process of the hearing on the motion to suppress, it developed that the State was contending that there was a connection between defendant and the heroin at the Travelodge Motel, but it appears that it was definitely understood between the parties that defendant was not charged in this case with the possession of such heroin. It was definitely understood between the parties that the prosecution in the instant case was for the possession of heroin which the evidence shows was found in an automobile being driven by defendant. The basis of the motion to suppress was a charge by defendant that the heroin found at the Travelodge Motel was obtained as a result of an unconstitutional search and seizure. A recital at this time of the evidence on the hearing of the motion to suppress would be a mere repetition of what was comprehensively stated by Judge Tyson in Golden v. State, Ala.Cr.App., 361 So.2d 1128, cert. denied 361 So.2d 1132 (1978). The relation between appellant and Golden, as indicated by substantial evidence, is shown by the opinion in Golden, as well as by the record in the instant case.
We adopt the conclusion reached in Golden that ". . . probable cause, coupled with exigent circumstances (the destruction of evidence), justified the warrantless search of appellant's motel room under the fifth exception to warrantless searches listed in Daniels, supra, [Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973)]."
The determination that there was no illegal search and seizure at Travelodge makes it unnecessary to decide whether appellant herein had standing to question the constitutionality of the search of a room at the Travelodge and the seizure of the heroin found therein, as to which parties were in disagreement at the hearing on the motion to suppress.
Detective Michael M. Farrier and Officer T.M. Armstrong, of the Narcotics and Dangerous Drugs Division of the Montgomery Police Department, testified that soon after the search and seizure of the heroin at the Travelodge and the arrest of Holly Golden and the other female who, according to the facts narrated in Golden, supra, and according to the evidence in this case, were emptying heroin into the toilet and bathtub of the motel room they were occupying, they located defendant herein in a Thunderbird automobile, which answered a description and license tag number of the automobile they had been informed he had been using in connection with the sale of heroin, and for which vehicle a dispatch had been "put out" by the Police Department. The two *Page 355 
were frisked for a weapon and brought to the City Hall, one by one of the officers in the officers' automobile and the other by the other officer in the automobile defendant was driving.
Officer Farrier testified that before they left the scene of the apprehension of defendant, a search of his automobile was made by Officer Farrier. He stated that he was looking chiefly for any weapon in the automobile, and he said that at the time he pulled up the arm rest "in the middle of the seat on the driver's side" he found a penny match box under the arm rest. He then searched the seat and under the seat on the passenger's side and found nothing. According to Officer Armstrong, he did not see Officer Farrier searching the automobile defendant was driving.
Both officers testified that after the two men in the automobile driven by defendant were brought to police headquarters, defendant was taken out of the automobile he had been driving, and the car was locked, with Officer Farrier keeping the keys for the time being. While defendant was at headquarters he was asked if he would consent to a search of his automobile, and he replied in the affirmative. The two officers then went out and searched the automobile. At that time, according to both officers, Officer Armstrong found a penny match box on the floorboard under, or almost under, the seat on the passenger's side of the automobile. In the match box was a paper in which a powdery substance was contained. The match box and its contents were preserved, turned over to a State toxicologist, whose qualification as a witness was admitted by the defendant and who testified that the powdery substance was heroin.
We do not agree with appellant that the search of the automobile at police headquarters that resulted in the seizure of the penny match box with heroin therein was illegal. Appellant does not deny the existence of the probable cause premise but insists that at that time no legal search could be made without a warrant. He does not claim that the circumstances at the time of the apprehension of defendant while driving his automobile were not sufficiently exigent to justify an arrest without a warrant.
One answer to appellant's contention in this respect is found in the conclusion reached in Chambers v. Maroney, 399 U.S. 42,90 S.Ct. 1975, 26 L.Ed.2d 419 (1970):
 ". . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
 "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. Compare Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. But as Carroll, supra, held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."
Another answer to the position taken by appellant is that the trial court was justified in concluding that defendant had voluntarily consented to a search of the automobile. This conclusion is reached with full regard for Rosenthall v.Henderson, 389 F.2d 514 (6th Cir. 1968); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951); and Higgins v. UnitedStates, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954), cited by appellant as holding that a consent to *Page 356 
search is per se invalid, but which would be better assayed as holding in effect that consent is prima facie invalid. The evidence in this case is sufficient to overcome any possible presumption of invalidity. It is not a case in which "it is incredulous to say that he actually consented to a search of a place where he knew incriminating evidence to be" as argued by appellant. Whether a correct conclusion or not, it is certainly a reasonable conclusion that during the process of defendant's being required to get back in the Thunderbird, after he and the other occupant had been personally frisked while they were out of the automobile, he (the defendant) while moving or being moved from the driver's side to the passenger's side of the automobile adroitly moved the penny match box with its contents from beneath the hand rest near the driver's seat to the floorboard under the passenger's seat. This is emphasized by one of the contentions made on the trial that the match box and its contents could as well have been property of the passenger as the property of defendant. In this connection, it should be said that the record is silent as to any possible connection between the passenger in the automobile and the presence of heroin therein and that no charge was made against the passenger.
While Officer Farrier was being cross-examined as a witness, the following occurred:
 "Q Well whatever you did at the scene, whatever you did, did it turn up any thing to connect Wayne Blaine with any of the alleged heroin in the car?
"MR. BELL: I object to that.
"THE COURT: Sustained."
A similar question was asked and a similar ruling made during cross-examination of Officer Armstrong:
 "Q Yes, sir, you stated that. Did you find anything in the vehicle that would in any way connect or provide a link between Wayne Blaine, the Defendant, and that match box?
"MR. BELL: I object to that as calling for —
 "THE COURT: Sustained. Ask him what else he found in the vehicle."
We find no error in either of the court's rulings. Both witnesses were interrogated intensely by both parties as to what was found in the automobile at the time defendant was first apprehended and thereafter at the police station. Counsel for defendant was given great latitude to bring out from the witnesses all of the facts. Appellant cites no case in which it was held that the trial court committed reversible error in sustaining objections of the State to questions similar to those quoted above. Notwithstanding the difficulty often encountered as to whether a particular question calls for an inadmissible unauthorized conclusion or opinion of a witness on the one hand, or admissible testimony on the other, we consider both questions as argumentative in nature and as calling for nothing but bald unauthorized conclusions of the witnesses. Assuredly, the trial court did not abuse the discretion vested in it in sustaining the State's objections to the questions.Dersis v. Dersis, 210 Ala. 308, 98 So. 27 (1923); JohnsonPublishing Co. v. Davis, 271 Ala. 474, 124 So.2d 441 (1960);Daniell v. State, 37 Ala. App. 559, 73 So.2d 370, cert. denied,261 Ala. 145, 73 So.2d 375 (1954); White v. State, 40 Ala. App. 378, 114 So.2d 325 (1959). See also, Gamble, McElroy's AlabamaEvidence, § 127.01 (4) for a valuable and comprehensive consideration of the fact-opinion dichotomy.
Defendant objected to the introduction of a copy of the rental contract between the Hertz rental company and Anna Consalvo to the Thunderbird automobile bearing the license number of the automobile defendant was driving, which copy was found in the room at the Travelodge where the two females were found pouring heroin into the bathtub and toilet. The objection was limited to the ground that the copy was not the best evidence and there was no "offer of any explanation as to the original of the document." The objection was overruled. Although the copy is referred to in the record as a "carbon copy," it is not merely a carbon copy. It is one of the duplicate originals of the instrument and *Page 357 
was admissible without any explanation as to the nonproduction of the other duplicate original. London Liverpool v. GlobeIns. Co., etc. v. McGree, 213 Ala. 534, 105 So. 901 (1925);Campbell Motor Co. v. Brewer, 212 Ala. 50, 101 So. 748 (1924);Robinson v. State, 38 Ala. App. 315, 82 So.2d 815 (1955). In addition, the particular instrument was "merely incidental and collateral to the main, or a main, issue in the case," and only "the general gist of the writing was important" and there was "no need to ascertain or know the precise details of the contents of the writing." Gamble, McElroy's Alabama Evidence, § 226.01 (2)(3) (1977).
Where constructive possession of contraband is relied upon by the prosecution, it is necessary to show guilty knowledge, but such guilty knowledge can be shown by circumstantial evidence.Daniels v. State, 49 Ala. App. 654, 275 So.2d 169 (1973). The circumstances as a whole, including those narrated above, point strongly toward guilty knowledge on the part of appellant and furnish sufficient basis for the verdict finding him guilty.
This case is distinguishable from cases such as Parks v.State, 46 Ala. App. 722, 248 So.2d 761 (1971) in which defendant's mere presence as a passenger in the front seat of an automobile his brother was driving was held to be insufficient to show his knowledge of the presence of narcotics found on the floorboard back of the driver's seat.
Proof of ownership of a controlled, or an illegally possessed substance is not required. Parks v. State, supra; Womack v.State, 34 Ala. App. 487, 41 So.2d 429 (1949); Thompson v. State,32 Ala. App. 402, 27 So.2d 55 (1946).
After considerable testimony as to the search of the room in the Travelodge Motel and the seizure of a large quantity of heroin and the identification of "State's Exhibits Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen as sealed clear plastic packets containing heroin" that had been retrieved by the officers from the toilet, the bathtub, the trash basket, or the drains of the bathtub, of said room, the following occurred:
 "MR. BELL: Your Honor, at this time the State would offer in evidence State's Exhibits Numbers Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen — the heroin found in Room 105 of the TraveLodge Motel.
"THE COURT: Any objection?
 "MR. POOL: Object on the grounds of relevancy and also missing chain in the chain of evidence.
"THE COURT: Overruled, it's admitted."
Appellant insists that this ruling of the court was erroneous, that such evidence was subject to the "general exclusionary rule that evidence of other offenses occurring before the offense charged is ordinarily not admissible because of the tendency to prejudice the defendant and to secure a conviction based upon crimes other than the crime instantly charged." In support of his insistence, appellant cites Brantley v. State,294 Ala. 344, 317 So.2d 345 (1975) and Lucy v. State, Ala.Cr.App. 340 So.2d 840, cert. denied 340 So.2d 847 (1976). Both cases, as well as a host of other cases, support the proposition stated by appellant that, according to the general exclusionary rule, evidence as to crimes other than the one for which defendant is being tried at the time is not admissible. Both cases, however, as well as a large number of other cases, recognize that there are many exceptions to the general exclusionary rule.
We doubt that there was timely and definite objection, on the ground now claimed, to abundance of evidence as to the activities as to heroin being conducted in or about the room of the Travelodge that was searched, and we further doubt that the introduction into evidence of the physical results of the search was harmful to defendant, for the reason that the jury had already been fully informed by undisputed evidence as to the location and seizure of the heroin. As heretofore stated, defendant had filed a pretrial motion to suppress such evidence on the ground that it was obtained by an illegal search and seizure and such motion had been denied, correctly, we think. Contrary *Page 358 
to a ground of objection to the introduction of the physical fruits of the search and seizure specifying that a chain of possession of it had not been established, we are of the opinion that it was well established by the evidence. Furthermore, appellant does not insist on such ground on appeal.
As to the ground of the objection "of relevancy," neither party on appeal takes any definite position. Nor does either party cite any case as a precedent for determining whether the evidence was relevant. In our opinion, it was, and comes well within one or more of the exceptions to the general exclusionary rule, particularly the exception of scienter or guilty knowledge.
Both at the time of the objection under consideration and at the conclusion of the case, the evidence was uncontradicted that heroin had been found in the automobile defendant was driving. The real issue between the parties was whether defendant had knowledge of his constructive possession of the heroin. The evidence, in this case, as well as the evidence narrated in Golden v. State, supra, was that the person who registered for the room in which the heroin was found had recently registered and paid for another room in the motel for Wayne Blaine, the appellant, and had "registered a Thunderbird, License No. LCC 744" on her registration card, and had paid for two other rooms in the motel. Although defendant's scienter or knowledge of the presence of the heroin in the automobile being driven by him is not conclusively established by the evidence as a whole, that part of the evidence as to the heroin in the motel room, defendant's connection with the person registering for the room and the persons in the room at the time the heroin was seized, the identity of the automobile in which the heroin was found as the automobile being operated by the registrant for the room in which the heroin was found and the registrant for the room assigned to defendant, was definitely relevant to the question of his scienter or guilty knowledge and was admissible. The case is distinguishable from Van Nostrand v.State, 51 Ala. App. 494, 286 So.2d 903, cert. denied 291 Ala. 799, 286 So.2d 906 (1973), in which it was held that on a trial on an indictment charging an unlawful possession or sale of heroin it was error to admit "evidence constituting a separate and distinct offense from that charged in the indictment: to-wit, possession or giving away marijuana."
During the closing argument of counsel for the State, the following occurred:
 "MR. POOL: Your Honor, we object to that. There is no evidence of any sale of any drugs in this case and we object to that.
 "THE COURT: That's not in this case. Argue your facts."
The particular portion of the record is an island unto itself. The record does not show the argument to which the objection was made or any effort on the part of defendant to obtain a more definite ruling of the court as to defendant's objection. We are called upon, in effect, to reverse the trial court for not unequivocally sustaining defendant's objection to an argument of State's counsel not shown by the record other than by the possible implication of the objection made by defendant's counsel, which is even less informative as to the substance of the argument objected to and more fragmentary than the objection of defendant's counsel in McClary v. State,291 Ala. 481, 282 So.2d 384 (1973), in which it was held:
 "The fragmentary objection contained in the record does not meet the requirements of the authorities cited supra and the trial court's action in overruling the stated objection did not constitute reversible error."
In accordance with McClary, the ruling of the trial court was not erroneous.
An oral statement, which Detective Jim Nichols testified was made by defendant soon after his arrest, was admitted in evidence over the objection of defendant. Promptly after the witness was sworn, the court conducted a hearing out of the presence of the jury as to the question of the admissibility of the statement, at which hearing defendant, as well as Detective *Page 359 
Nichols, testified. According to the testimony of Detective Nichols, the statement was a lengthy one, of which Detective Nichols had had made a typewritten transcription, which he possessed as he was testifying but which transcript was not offered or admitted in evidence, although it was obviously used by the witness to refresh his recollection. According to Detective Nichols, defendant denied knowledge of and connection with the heroin found in the automobile he was driving but admitted "that he knew the heroin was located in Room 105 of the Travelodge Motel" and his personal acquaintance with Molly Golden and Anna Consalvo. The witness fully covered the field as to voluntariness and all post-Miranda requirements as a prerequisite to the admission in evidence of the confession of an accused. He read to defendant from a printed form including a waiver to be signed by an accused, but defendant refused to sign the waiver.
Appellant's contention as to the question of the admissibility of defendant's statement is directed solely to the fact that defendant refused to sign a waiver. He argues that this shows that defendant did not in fact voluntarily, knowingly and intelligently waive his constitutional right to an attorney at the expense of the State and his right against self-incrimination.
Defendant did not testify in the case except on the in camera
hearing as to the admissibility of his statement. He there testified that he did not make any oral statement whatever to Detective Nichols or the other officers. He also testified that he was advised of his rights. He said also that he was asked to sign a waiver of rights form, but that he refused to do so; that the detectives attempted to induce him to make a statement by promising to protect him, which he "didn't listen to" and "I didn't tell them nothing." As to his ability to read and write, he said:
"Q Can you read well?
"A No, sir.
"Q Can you write well?
"A No, sir.
"Q Can you read at all?
"A Well, not too good. No, sir.
"Q Can you write?
"A No, sir, I print."
Defendant was not asked to sign anything other than the waiver of rights form.
The fact that defendant refused to sign the waiver of rights form may well be a circumstance tending toward the inadmissibility of his statement, but it does not in and of itself make it inadmissible. Under all of the circumstances properly taken into consideration by the trial court, we are of the opinion that the trial court was not in error in admitting it. We readily distinguish United States v. Nielsen,392 F.2d 849 (7th Cir. 1968), relied upon by appellant, in which defendant "refused to sign anything until he saw his attorney." It was held that "defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation." No such conclusion can be reached from the facts in the instant case. There is nothing in the record to indicate that defendant's refusal to sign a waiver was reasonably attributable to anything other than his inability to read and write well. Furthermore, defendant's own testimony in the instant case discloses that he was advised of his rights, that his status as an ex-felon helped him to know that he was advised of his rights before he made the statement to which the objection was made. He said, inter alia, that the offers or inducement made to him to get him to make a statement, which he said he never made, occurred "At the time I was placed in the Montgomery City Jail that Detective Green and Detective Mike Farris and the other officer give me my rights and all."
The only other ground for a reversal asserted by appellant is to the effect that the trial court was in error in looking over the typewritten transcript of the oral statement of defendant prior to the determination by the trial court of the question of the admissibility of the oral statement. Appellant states in his brief: *Page 360 
 "Although there seem to be no Alabama cases in point, Appellant takes the position that it is without the province of the Court to examine the substantive aspects of a confession prior to reaching a determination as to its voluntariness vel non."
We think counsel would be hard pressed to find a precedent anywhere for holding that the trial court committed reversible error in the respect claimed. We hold that it did not.
We have considered all questions raised by resourceful counsel for appellant. We think that he has presented all that the record permits. We find no error prejudicial to appellant. The judgment should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.