HARRIS, Presiding Judge.
Appellant was charged in a five-count indictment with possession of controlled substances in violation of the Alabama Uniform Controlled Substances Act. Counts one through five of the indictment alleged, respectively, felonious possession of heroin, secobarbital, amobarbital, chlordiazepoxide, and diazepam; controlled substances within the Act. Appellant, in her own proper person, and by and through her attorney, executed and filed a written waiver of arraignment and entered a plea of not guilty and not guilty by reason of insanity. The jury returned a verdict of guilty on all five counts. Appellant was adjudged by the Court to be guilty in accordance with the verdict of the jury and was sentenced to a term of fifteen years in the penitentiary. Appellant gave notice of appeal, bond was set in the amount of $50,000.00 and new counsel of her choosing represents her on this appeal.
Following an evidentiary hearing, appellant’s motion to suppress evidence as the product of an illegal search was denied. The trial court found that probable cause and exigent circumstances existed to justify the warrantless search. Appellant moved *46 to exclude the State’s evidence on the grounds of unlawful search and seizure and failure to prove possession of heroin. The motion was denied. Appellant’s request for the affirmative charge was refused and appellant timely filed a motion for a new trial.
The testimony of Corporal David Green of the Montgomery Police Department shows that on May 17, 1977, he received a phone call from a confidential informant who stated that a black male was staying with a white female at the TraveLodge Motel on Federal Drive and was dealing heroin. The informant telephoned Green again on May 18 and said the black male’s name was Wayne, that he “had personally observed a quantity of white heroin in Wayne’s possession,” and that Wayne had told him the white female’s name was “Ann or Annie.” The informant also told Green that Wayne had given him some heroin, that he has used it the night before and it made him sick; and that he had observed Wayne driving a silver Thunderbird with Georgia license number LCC 744. The informant stated that Wayne told him there was “a lot more heroin back at the motel room with Ann or Annie.”
Following the conversation, the informant brought the substance he had received from Wayne to Corporal Green, who conducted a field test which revealed the presence of heroin. Another officer, Captain Hudson, informed Green that he had received substantially the same information from a confidential informer that morning. The evidence showed that Corporal Green had never received information from this informant before, and that he was paid after he turned the heroin over to police.
A telephone call by Green to the manager of the TraveLodge Motel on Federal Drive revealed that a white female named Anna Conte was registered in Room 105 with two other white females. Ms. Conte had also paid for a room occupied by a black male. The vehicle registered by Ms. Conte when she checked in was a silver Thunderbird with Georgia license plates LCC 744. The manager told Green that the black male had left in the Thunderbird but that appellant and the two white females were still registered in Room 105.
In an attempt to make a police drug “buy” from the occupants in Room 105, Detective Machael Farrier was wired for audio-transmission and went to the TraveL-odge Motel in an unmarked car. Corporal Green, along with Detective Nichols, also went to the TraveLodge in another vehicle which contained a surveillance monitor to receive transmissions from Farrier. Green testified that, from the car in which he and Detective Nichols were sitting, he saw Farrier knock on the door to a room in the vicinity of Room 105. An inaudible response was heard over the monitor and Farrier went back to his car. In a moment a white female (appellant) came out, walked toward the car in which Farrier was sitting, and got in. In order to improve the transmission, Officers Green and Nichols drove to the back of the motel. They heard a woman’s voice questioning Farrier at length about how he knew “Wayne”.
At this point another white female, later identified as Holly Golden, walked around the corner of the motel, past the car in which Nichols and Green were seated. She looked at them as she walked by. Green testified that, based on her appearance, they suspected the woman was one of the white females with appellant and that she had spotted them as police. The officers moved the car to the north end of the motel and Green got out and walked back to observe Golden. The officers decided to watch her and try to prevent her from entering Room 105. She walked back in the direction from which she had come and went toward Room 105. When Golden reached the door, she grabbed the doorknob and twisted it, but apparently the door was locked. After knocking, she was admitted by someone inside the room and slammed the door shut. Green ran to the door and tried to open it. It was locked. He was joined by Detective Nichols and both officers began beating on the door shouting “police officers, open up.” This was repeated three or four times with no response. Then the officers heard water running in *47 the room. Detective Nichols tried to kick the door down but was unable to do so. Entrance into the room was gained through an open window. A white female, later identified as Dee Dee Scaloni, was standing in the bedroom. She took a knife and started toward the officer in the bathroom but the knife was taken from her. Holly Golden was found in the bathroom flushing the toilet. Water was running in the bathtub. White powder which was identified as heroin was found on the bathroom fixtures, on the floor and in the air. Golden and Scaloni were advised of their rights and placed under arrest. The defendant was brought into the room by Detective Farrier, also advised of her rights and placed under arrest.
When appellant entered the room she grabbed for a gold clutch purse which was located inside a larger black purse. When asked why she reached for the gold clutch purse, she stated that it was not hers and that it did not belong in her purse. Detective Nichols opened the purse and found that it contained needles, syringes, a heroin cooker, and a bottle containing pills and capsules.
Detective Farrier testified that, when he was in the car outside Room 105 with appellant, he told her that he wanted to buy a $20.00 bag of heroin. The appellant stated that $20.00 bags were only samples and that they did not sell those. Farrier told her that he had $200.00 and wanted to buy whatever that would buy. Appellant stated that that wouldn’t buy much. At this point in the conversation Detective Green ran up to Room 105 and started knocking on the door. Detective Farrier asked appellant what was going on. She replied that she did not know, and stated, “It’s the cops, let’s get out of here.” Farrier then informed her that he was a police officer and took her into Room 105, where she was arrested for possession of heroin.
The State Toxicologist testified that he performed a chemical analysis on the substances recovered at the scene and that this analysis revealed the presence of heroin. A total of 105.8 grams of 10% pure heroin was recovered, having a street value of approximately $175,000 to $250,000. He further testified that the pills and capsules found in the bottle in the gold clutch purse contained secobarbital, amobarbital, chlordiazepoxide, and diazepam, controlled substances, as named in Counts II-V of the indictment.
Appellant contends that the evidence admitted at the trial was the product of an illegal search and should have been suppressed. Specifically, appellant urges that the trial court erred in finding that exigent circumstances, coupled with probable cause, existed to justify the warrantless search. Our Supreme Court has recognized the existence of exigent circumstances coincidental with probable cause as an exception to the Fourth Amendment’s warrant requirement. Daniels v. State, 290 Ala. 316, 276 So.2d 441. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.
Probable cause to believe that appellant possessed heroin was based on information received from an unknown informant. In order to form a sufficient basis for probable cause, the underlyipg circumstances must be shown both from which the informant concluded the narcotics were where he claimed them to be and from which the officer concluded the informant was credible or his information reliable. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Although that case involved probable cause to issue a search warrant, the constitutional standard is the same for warrantless searches as for issuance of search warrants. Aguilar, supra; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.
Corporal Green testified that his informant told him he had “personally observed a quantity of heroin” in the possession of appellant’s companion, Wayne, at the TraveLodge Motel and was told by Wayne that there was more at the motel. He was even given some of the heroin, which he turned over to police. The personal and recent observation of criminal activity by an unidentified informant is an indication of the reliability of the information given to police. U. S. v. Harris, 403 U.S. *48 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. In this case, the informant not only observed criminal activity, but was a participant, in that he was also in possession of the heroin. The admission of illegal possession of heroin made to Corporal Green, buttressed by actual delivery of the heroin, constituted a declaration against the penal interest of the informant.
In Harris, supra, the Court said, at 583, 91 S.Ct. at 2082:
“Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a ‘break’ does not eliminate the residual risk and opprobrium of having admitted criminal conduct.”
Also, in United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, it was held that statements made to officers which were against the penal interest of the de-clarant carried their own indicia of reliability and were sufficient in themselves to warrant consideration as evidence in a suppression hearing.
Appellant relies heavily on the fact that Corporal Green had never before received information from this informant, and argues that his reliability could not therefore be shown. The prior, proven reliability of an informant is, of course, an indication of the present reliability of his information, as well as of his credibility. It is not, however, necessary when other indicia, sufficient to show probable cause, are present. U. S. v. Harris, supra; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Glenney v. State, 281 Ala. 9, 198 So.2d 293.
This Court recently considered decisions of the United States Supreme Court and appellate courts of this State on this point, Dudley v. State, Ala.Cr.App., 342 So.2d 437, holding that, when the information furnished by an informant is demonstrated to be reliable as being against the penal interests of the declarant, there is no necessity to further show the informant to be credible. Aguilar, supra; Bates v. State, 51 Ala.App. 338, 285 So.2d 501, cert. denied 291 Ala. 773, 285 So.2d 506, cert. denied 416 U.S. 939, 94 S.Ct. 1940, 40 L.Ed.2d 289.
Finally, in addition to the informant’s statements being against his penal interest, there was independent corroboration by Corporal Green himself. He telephoned the TraveLodge Motel, whereupon the manager confirmed the report that a black male driving a silver Thunderbird with Georgia license LCC 744 had registered, accompanied by white females. The informant’s “Ann or Annie” was the appellant, registered as Anna Conte. Ms. Conte had paid for Wayne’s room and registered the Thunderbird in her name. This information, coupled with the informant’s statement that “Annie had even more heroin at the motel,” adequately served to corroborate the “tip” and to connect appellant to Wayne and the heroin. Further verification was obtained from the monitored conversation between appellant and Detective Farrier at the motel, and the information received by Captain Hudson.
Probable cause having thus been shown, the question remains whether exigent circumstances existed to create an exception to the warrant requirement. The officers in this case were confronted with the unforeseen situation of having an attempted police drug buy endangered by appellant’s companion, Holly Golden, who possibly “spotted” Detectives Green and Nichols. While trying to get Ms. Golden to open the door to Room 105, the officers heard the toilet in the room flush. Believing the heroin was being destroyed, they entered the room through a partially opened window, where they found Holly Golden attempting to flush the heroin down the toilet.
The exigency of the impending destruction of evidence will justify a warrant-less search if probable cause coexists. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Jenkins v. State, 46 Ala.App. 719, 248 So.2d 758. Even if the operation was poorly planned as alleged by appellant, there is nothing in the record to indicate that the officers deliberately “bootstrapped” themselves into a search of the *49 premises under the guise of the attempted buy. Once the officers were surprised by the appearance of Holly Golden and the threat of recognition, the planned buy was aborted in an effort to prevent Ms. Golden from destroying the heroin.
Probable cause and exigent circumstances existed to justify the warrantless search and seizure, and no error is found in the trial court’s finding. See also Golden v. State, Ala.Cr.App., 361 So.2d 1128, wherein this Court upheld the search and seizure based upon the identical facts in the companion case to this one.
Appellant did not testify, nor did she offer any evidence in her behalf.
A careful examination of the other issues presented by appellant reveals them to be without merit.
We have carefully searched the record for errors injuriously affecting the. substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.