LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence to imprisonment for fifteen years on a trial without a jury, the judgment reciting that defendant had withdrawn “his demand for trial by jury.” The two-count indictment charged, inter alia, in the first count that defendant “did, unlawfully, wilfully and feloniously possess Marijuana” and in the second count that he “did, unlawfully, wilfully and feloniously possess Lysergic Acid Diethylamide.”
As a part of appellant’s brief bearing the caption “STATEMENT OF THE CASE,” is the following:
“... Apparently the defendant and the prosecution entered into an agreement to submit the case to the court for a determination of guilt or innocence on the basis of the testimony presented at the hearing on defendant’s Motion to Suppress the evidence. However, this agreement does not appear in the record, nor is there any direct reference to any such agreement anywhere in the record. In any event the trial court, on the basis of the evidence before it, adjudged the defendant guilty on both counts as charged in the indictment and continued the case for sentencing. (R. 40).”
*313 Under the same caption in appellee’s brief, it is stated: “Appellee herein adopts Appellant’s Statement of the Case as being substantially correct.”
Notwithstanding the undesirable state of the record, we proceed to consider the issues raised by appellant, which, though three in number, focus on whether the evidence was sufficient to support the trial court’s denial of defendant’s motion to suppress and its judgment convicting the defendant.
The ORDER of the trial court denying defendant’s motion to suppress is as follows:
“This case is submitted to the Court upon a Motion to Suppress based upon allegations of an illegal search. The Defendant contends that a warrantless search of the automobile he was driving violated the Defendant’s Constitutional rights and that evidence obtained pursuant to the search should be suppressed at trial.
“The Court has conducted an evidentiary hearing and has heard testimony from the officer who conducted the search in question. On the day of the search the officer, J.E. Russell, received information from an unidentified informant to the effect that the Defendant was seen going to his automobile with marijuana in his possession. The automobile searched met the description of the automobile given by the informant to the officer. The information that the officer received was in substance that the Defendant was headed towards a party with the contraband in his possession. The reliability of the unidentified informant was adequately proven.
“The Court is of the opinion that there was probable cause to arrest the defendant for either constructive or actual possession of a controlled substance. This probable cause was based upon the information from the informant as heretofore set forth. Whether one is concerned with probable cause to arrest or probable cause to search, the amount of evidence required is generally the same. Nikolic v. State, [ (Ala.Cr.App.) ] 384 So.2d 1141, at page 1144.
“It is the opinion of the Court that with probable cause to arrest the officers were entitled to search the vehicle in question under the facts and circumstances of this case and considering the totality of all of the circumstances. Only a very short period elapsed between the receipt of the information from the informant and the sighting of the vehicle. There is evidence that the processing of a search warrant to search the vehicle was impractical after the vehicle was sighted because of the bona fide problems confronted by the officers, i.e., imminence of escape or loss of evidence.
“The probable cause as set forth above, coupled with the exigent circumstances of the mobility of the vehicle, in this Court’s opinion, formed a reasonable basis to search. The search of the vehicle in the glove compartment thereof was justified and did not violate the Defendant’s constitutional rights. Carrol [Carroll] v. United States, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543].
“Accordingly, the Motion to Suppress be and the same is hereby DENIED.
“DONE this the 3rd day of November, 1981.
(Sgd.1 Joseph D. Phelps
CIRCUIT JUDGE”
Appellant’s brief is commendably comprehensive as to the authorities pertaining to the question whether a law enforcement officer who relies principally upon information given him by an informant is justified in making a warrantless arrest of, or in conducting a warrantless search of the vehicle of, a person accused of the possession of a controlled substance. Many cases are cited that purport to apply the two-pronged test as to the existence vel non of probable cause established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and expanded in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Appellant’s brief states little to the effect that the circumstances shown by the evidence in this case fail to meet the “veracity prong” but strongly and lengthily contends that they do not meet *314 the requirements of the “basis of knowledge prong” of the Aguilar test.
The parties are in agreement that a “warrantless search” was not involved in either Aguilar or Spinelli but that the principles set forth therein as a test of the sufficiency of the requirements of probable cause for conducting the search are at least as stringent as the test applied in Aguilar and Spinelli in the matter of the issuance of a valid search warrant. Murray v. State, Ala.Cr.App., 396 So.2d 125 (1980); Consalvo v. State, Ala.Cr.App., 372 So.2d 44 (1979).
As there is no issue between the parties here as to the established reliability of the informant, we will now devote attention exclusively to that part of the testimony of Officer J.D. Russell as to what he observed, as to what his informant had told him, as to the time and the place where each of them was when the dialogue between them occurred and as to the time and the place where the defendant and Officer Russell were from the time he first observed the motor vehicle in which the controlled substances were found until it was found in the glove compartment of the vehicle. Officer Russell testified, inter alia:
“Q. Now, what, if anything, did this source state to you at or about 7:40 p.m. on the 21st of March of this year?
“A. He stated that he was familiar with a Charles Owen who lived at 26 Polaris Drive. He stated this subject drove a white Ford Mustang, and that he was, at that time, preparing to leave his residence; that he was in that vehicle with a quantity of marijuana.
“Q. Now, did he state to you how he was aware that this was happening?
“A. Yes, sir, he did.
“Q. Did he state whether or not he had personal knowledge that the Defendant was about to leave, or would have marijuana in his car?
“A. Yes, sir, he did.
“Q. After receiving this information from the source, what, if any, action did you take?
“A. I advised Investigator Cochrane of the information that I had received. At that time, we got en route to the Polaris Drive area.
“Q. Now, let me ask you this before we go further. With respect to this source you had, other than comments about Mr. Owens conduct, did he make any further comments to you?
“A. Concerning any other activities, or concerning Mr. Owens?
“Q. Do you know whether or not your source knows and recognizes marijuana? “A. Yes, sir, he does.
“Q. Did he state to you how he knows marijuana?
“A. He has told me that he has personally used marijuana on previous occasions.
“Q. Did he tell you this on the 21st of March of this year at about 7:40?
“A. Yes, sir, he did.
“Q. Now, after you received, or got, this telephone call from the source, what, if any, action did you take?
“A. Investigator Cochrane and I went to the area of Polaris Drive. As we were coming down Air Base Boulevard we observed a white Ford Mustang pulling off of Polaris. The tag number on this vehicle was the same one that the confidential source had given me during the phone call.
“Q. Did you all have an occasion to park your car, or were headed into the area when you saw the vehicle?
“A. We were still moving.
“Q. Upon seeing this automobile, you say the tag number matched?
“A. Yes, sir, it did.
“Q. What about the vehicle itself?
“A. It was a white Ford Mustang.
“Q. And what, if anything, did you notice about this vehicle with respect to the occupants?
“A. The vehicle appeared to be occupied by three people, two persons in the front of the vehicle, and one in the back. The vehicle was driving in a very erratic manner; turned off of Air Base Boulevard into Day Street. The speed varied anywhere from twenty-five to sixty-five *315 miles an hour, constantly up and down. Some swerving. It appeared that the persons inside the car were drinking some type beverage. At that time we decided to have a patrol unit stop the vehicle instead of attempting to stop it ourselves, and this was done at the intersection of Court Street and Finley.
“Q. A patrol unit stopped the vehicle at that location?
“A. Yes, it did.
“Q. Did the patrol unit stop the vehicle at you-all’s direction?
“A. Yes, sir, they did.
“Q. After the vehicle was stopped, did you all — did you witness the stopping of it?
“A. Yes, sir, we did.
“Q. What did you all do next, once the vehicle had come to a halt?
“A. I stepped out of our police vehicle. Mr. Owens stepped out of his car and came toward our vehicle.
“Q. Who, if anyone, was driving the white Mustang?
“A. Mr. Owens was.

“Q. Now, you say Mr. Owens headed back toward you all’s vehicle, as you stopped him?
“A. Yes, sir. He jumped from his vehicle and came to ours.
“Q. What happened after he did this?
“A. He talked with Investigator Co-chrane, and I continued on to the Mustang that was stopped.
“Q. When you continued on to the Mustang that was stopped, what, if any, action did you take at that vehicle?
“A. I asked the two subjects in the vehicle their names, and for identification.
“Q. And did you receive their names and identification?
“A. I received both names — the names of both subjects, and identification from the white male who was in the back seat. The female stated she did not have any.
“Q. At this time, did you have an occasion to look into, see, or search the white automobile?
“A. I asked the persons in the vehicle if they had any weapons in the vehicle, and they replied that they did not. I asked the female subject to open the glove compartment so I could check it.
“Q. Where was she seated?
“A. In the right front passenger seat.
“Q. And did they open the glove compartment?
“A. She did.
“Q. And what, if anything, did you note or observe?
“A. Observed a large plastic bag that contained plant material that I believed to be marijuana, at that time.”
During the cross-examination of Officer Russell, he testified that his confidential informant told him that “he personally observed drugs” and that “Mr. Owens had approximately a quarter pound of marijuana in his possession.” He further testified in part on cross-examination:
“Q. And the drugs were in the glove compartment?
“A. Yes, sir.
“Q. And after the glove compartment was opened by somebody else, you looked in the glove compartment; am I correct?
“A. Yes, sir.
“Q. What was in the glove compartment?
“A. I do not recall all of the contents. The plastic bag contained three bags of marijuana, and a plastic Tylenol bottle which contained the LSD.

“Q. And you stuck your flashlight, and then saw the marijuana; am I correct?
“A. Best of my recollection, the glove compartment was lighted.
“Q. All right. Did you recognize this immediately as marijuana?
“A. I believed it to be, yes, sir.
“Q. You believed it to be?
“A. (Witness indicating in an affirmative manner).
“Q. You were not certain, but you thought it was; am I correct?
“A. In my opinion, it was marijuana; yes, sir.
*316 “Q. You did not make any test on the scene, did you?
“A. Not on the scene, on the street, no, sir.
“Q. Did you taste it or smell it at the scene, or anything, when you took it out of the glove compartment before you arrested him?
“A. I handled it and examined it and then advised him that he was under arrest.
“Q. You opened it up? Opened up the celophane and examined it there before you arrested him? Is that what you are trying to tell me?
“A. I am sure that I did.
“Q. No, sir, I do not want you—I am just—answer my question, if you will, please, sir. Did you open up the celo-phane and examine it there at the scene before you arrested him?
“A. I feel certain that I did, because I examined the LSD which was in the plastic bottle.
“Q. All right. You did not place him under arrest for any misdemeanor at the time, did you?
“A. Not that I recall^ no, sir.”
We do not agree with appellant’s insistence that “the basis of knowledge prong of the Aguilar test” was not met in this case as to the time factor, that is, that what defendant was doing in regard to marijuana, as related by the informant to Officer Russell, was too remote in time from the subsequent search to have met the “basis of knowledge test.” It is reasonably clear, we think, that what the defendant was doing, as reported by the informant to Officer Russell, was so closely related in time to the observance by the officer of the automobile being driven by defendant and the resultant discovery of the marijuana as to leave no doubt in Officer Russell’s mind, or in the mind of any other reasonable person, if the information was credible, that marijuana was probably in the automobile, in the actual or constructive possession of defendant, at the time the officers converged on the automobile and thereafter found the marijuana in the glove compartment thereof. We find nothing to the contrary in any of the cases cited by appellant.
Appellant raises also the question of the possible remoteness in distance between the informer and the defendant when, according to the informer, the defendant was “preparing to leave his residence” in a “Ford Mustang” with a “quantity of marijuana.” The transcript of Officer Russell’s testimony shows that the informer let it be known to Officer Russell that this information was based upon the informer’s “personal knowledge” and such personal knowledge could have come to the informer only by one or more of his five senses, by which any and all personal knowledge is obtained. To have been obtained by any one of the five, we must conclude, after excluding the sense of hearing as a possible medium, that a credible informer must have been close enough to the defendant and the marijuana during a part of the apparently short period of time in which the defendant was in the process of leaving with it in his motor vehicle from his residence on this particular occasion.
Testimony of Officer Russell that his informer stated that “he had personal knowledge” of the gist of what defendant was unlawfully doing is sufficient also, we think, to overcome appellant’s argument that the “record is absolutely silent as to how the informant obtained the information” communicated to Officer Russell as well as appellant’s argument that the information transmitted from the informer to Officer Russell was “a mere conclusion of the informer unsupported by any factual basis to justify or substantiate that conclusion.”
We are of the opinion that the evidence was ample to show that Officer Russell had probable cause for believing that the defendant was in possession of marijuana at the time he asked the passenger in the front seat of the automobile to open the glove compartment thereof, where the marijuana and the other controlled substance were found.
*317 The defendant did not testify either on the trial or on the motion to suppress. No question was raised on the trial, and none is raised on appeal, as to the sufficiency of the evidence to show that the substances found in the glove compartment of the motor vehicle constituted controlled substances as charged in the first and second count of the indictment. At any rate, there was substantial evidence thereof and of defendant’s guilt of their possession. Whether the evidence was sufficient to show defendant’s guilt beyond a reasonable doubt was, on the non-jury trial conducted, a question of fact for the trial judge to decide. The judgment of the court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except BOWEN, J., who concurs in the result only.